Irwin D. Davidson, J.
Defendant has been indicted for robbery, assault, criminally possessing two loaded pistols and related crimes. He makes three motions to suppress: (1) two pistols taken from his automobile and a blood-stained shirt he was wearing; (2) alleged admissions and statements; and (3) evidence of his hospital identification by the complainant, and to bar the complainant from testifying at the trial with respect to defendant’s identification as one of the perpetrators.
On September 24, 1965 the police responded to the scene of a robbery which had occurred in a clothing store on Canal Street during which many suits of clothes had been stolen and the victim had been pistol-whipped. While there, a person in the area told the police that the perpetrators had fled the scene in a blue automobile, New York license No. 1G-7135, later ascertained by the police to have been registered to the defendant, a person well known to the police. After investigating at one of his usual haunts in the area of Clinton and Grand Streets and not finding him or the car, the police proceeded to the Pike Slip Inn, located on Pike Street, another of his haunts. The police spotted his car parked on Pike Street, not far from the inn. As they walked towards the inn, they saw the defendant crossing Pike Street, approaching them. The defendant was asked if the car in question was his and he answered in the affirmative. As they all walked back towards the car the officers asked defendant when he had parked it there. Defendant responded that he had done so several hours previously and the keys were left with the barmaid at the inn. On the front seat of the car Detective Santamauro observed a newspaper partly covering what looked like the butt end of a gun. When asked what that was, defendant replied “ I don’t know; its not mine ’ ’.
*529 The car and its contents were left under the protection of a uniformed police officer pending the arrival of the police laboratory squad, and the defendant was transported to the precinct station house, where while entering, defendant asked Detective Roberts “Roberts, can’t we do something about this? ” This statement, and the statements he made prior to his removal to the station house, defendant seeks to have suppressed.
At the station house the police removed defendant’s shirt because its entire front was blood-spattered.
The members of the police laboratory squad inspected the car and searched it for contraband, as well as examined it for other evidence. One gun was found on the front seat underneath the newspaper and another was found under the floor mat in the front part of the car.
Later that day defendant was taken to Beth Israel Hospital where he was ushered into the presence of the victim, Abraham Groff, who was unable to identify him due to his serious physical condition. He was then semiconscious and both eyes were partially closed and blackened. Defendant was told he was being arrested for the illegal possession of guns and that he had a right to speak with a lawyer and was under no obligation to talk with the detectives. In the absence of identification, he was arraigned in court the following day and admitted to bail on the gun charge only.
Defendant remained at liberty until October 12, 1965. When he was leaving his home he was arrested on the robbery charge. He was told that the victim had identified him as one of the robbers from a police photograph. Defendant was again taken to the hospital where the victim identified him.
Defendant claims that not alone should the hospital identification be excluded from evidence, but that the victim should be prohibited from giving any identification testimony at the trial since the police had illegally taken him to the hospital for identification purposes. He contends that the victim’s ability reliably to identify him at the trial would be psychologically colored by the impact of the previous hospital confrontation. Defendant refers to the dissenting opinions in United States ex rel. Stovall v. Denno (355 F. 2d 731, 742).
Considering the defendant’s motions seriatim:
(1) The motion to suppress the two pistols and the bloodstained shirt is denied. There was no unlawful search and seizure. The search was incident to a lawful arrest and contemporaneous therewith. (Preston v. United States, 376 U. S. 364; Carroll v. United States, 267 U. S. 132.) With the information that defendant was suspected of having committed a rob *530 bery, the police could arrest him on sight for such felony (Code Crim. Pro., § 177, subd. 3). Furthermore, since the police had been told that the car in question had been used in the get away from the scene of the robbery, no search warrant was necessary to search the car.
Although the defendant was not present at the location when the car was searched, the detectives of the police laboratory squad examined it to preserve and discover evidence at the same location, before it was moved. Such search is nevertheless contemporaneous with the arrest. (People v. Preston, supra; People v. Moschitta, 25 A D 2d 686.)
Moreover, separate and apart from the above considerations, the search of the car may be sustained on a different ground. Where a police officer sees a gun which is contraband, in open view, though partially concealed by a newspaper, lying on the front seat of an automobile, he has the right and the duty to immediately seize the contraband. No search warrant is necessary. (People v. Rivera, 14 N Y 2d 441.) Having seized the gun, the detective would have the right to search the vehicle for additional contraband. Removing the defendant’s bloody shirt' was not an unlawful seizure since the defendant, a prime suspect, was wearing it when apprehended shortly after the robbery had taken place. The police knew from their own investigation that the victim had been pistol-whipped and caused to bleed profusely. Clearly the seizure of the bloody shirt was incident to his lawful arrest.
(2) The motion to suppress the statements made by the ■ defendant respecting the ownership of the car, the time when he parked it, where the keys were and whether he knew what was on the front seat, etc., is denied. Those statements were in response to routine questions asked by the police prior to the defendant’s arrest. While it is clear that at that time the police had probable cause to arrest him as a prime suspect in the robbery, such questioning cannot be deemed custodial interrogation. The evil which Miranda v. Arizona (384 U. S. 436) sought to guard against was questioning of a suspect in a police dominated atmosphere, cut off from the outside world and subjected to inherent compulsion to answer the policeman’s questions. Miranda was not intended to prohibit in the field questioning by the police, which is not custodial interrogation. In the instant case, the police had done nothing to compel the defendant to answer their questions; he was free to answer or refuse to answer as he saw fit. Having answered their questions, he may not now assert that such answers were made under compulsion.
*531 The statement made by defendant to Detective Roberts while he was entering the station house was made voluntarily, spontaneously, and without police interrogation. 'While it is true defendant was then in custody, nevertheless, he opened the conversation which smacks of an attempt to bribe the detective. Such statement voluntarily made by the defendant, not in response to police questioning, is admissible. (Miranda v. Arizona, supra; United States v. Gorman, 355 F. 2d 151.)
(3) Defendant’s motion to suppress the hospital identification and to bar the complainant from testifying at the trial with respect to the identification of the defendant is denied. The Stovall case (supra) does not support defendant’s position. In truth, it is stronger authority for admitting into evidence a hospital identification than that which occurred in the instant case. In Stovall the hospital identification was made after court proceedings had started, the defendant had been arraigned in court and the preliminary hearing had been adjourned to permit the defendant to obtain counsel. The court nevertheless held that the hospital identification did not violate the defendant’s right to counsel. In the instant case, defendant had been admitted to bail on the gun charge. Immediately after his arrest on the robbery indictment, he was taken to the hospital for identification by the victim. Such police action could not be interpreted as a violation of defendant’s right to counsel since at that stage defendant had not been arraigned on the robbery indictment. Even the Judges who comprised the minority in Stovall recognized that, in the preliminary stage and before arraignment, a hospital identification of an accused by the victim does not deprive the accused of his right to counsel.
Even if the testimony of the hospital identification were barred, the minority in Stovall recognized that the victim nevertheless would be permitted to testify to the identification of the accused based on the memory which the victim had of the circumstances of the crime at the time of its commission and also at the time of the trial. There is nothing in that case which goes to the extreme position which defendant’s counsel urges upon the court, namely, that because the police took the accused to the hospital for identification by the victim and allegedly infringed on his constitutional right to counsel that thereafter the victim should be prohibited at the trial from identifying the persons who perpetrated the robbery.
The District Attorney stipulated that on the prosecution’s affirmative case, the hospital identification would not be used. Even in the absence of such a stipulation, the hospital identification may not be used on prosecution’s affirmative case. (Code *532 Crim. Pro., § 393-b; People v. Hunter, 12 A D 2d 835.) Apparently he intends to use that identification only in the event that cross-examination may call into question the accuracy of the victim’s identification of his assailant at the trial.
Accordingly, petitioner’s motion must in all respects be denied.