541 P.2d 419

**STATE of Arizona, Appellee,**

v.

**Rhonda HOCKER, Appellant.**

**No. I CA–CR 850.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 21, 1975.

Rehearing Denied Nov. 21, 1975.

Review Granted Jan. 6, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Law Office of R. Kelly Hocker, Ltd. by R. Kelly Hocker and Glynn W. Gilcrease, Jr., Tempe, for appellant.

## OPINION

FROEB, Judge.

The defendant appeals from the judgment and conviction of possession of marijuana, a misdemeanor.

On March 8, 1974, Chief Walter Maule and Sergeant Robert Tubbs of the Winslow police department were patrolling the area around Winslow in an unmarked car following citizen complaints of marijuana use. Their actions that evening were not prompted by any specific report of crime or by information from an informer. It appears they were merely on patrol.

The evidence reasonably supports an account of the events which then occurred, as follows: around midnight, Maule and Tubbs were proceeding down the highway towards Winslow when they saw a car on a narrow, single-lane, dirt road about 100 yards off the highway. They turned around and went down the road toward the car which was proceeding toward them. As they approached, the driver of the other car, Donald Dowd, drove his car almost entirely off the road and stopped with one wheel going into a small drainage ditch. Maule and Tubbs continued to approach until they reached a point where the left front fender of their car was opposite the left front fender of the Dowd car. At this point, they noticed the cab of the car was filled with smoke. Maule and Tubbs stopped their car, got out, and walked toward the driver's side of the Dowd car. As they did, Dowd rolled the window down, and both officers recognized the smell of marijuana smoke. Dowd opened the door and stepped from the car to converse with Tubbs. Maule walked around the car to the passenger side to speak with the passenger, and the defendant in this case, Rhonda Hocker. As he opened the door, she slid across the seat toward the driver's side. Maule grabbed her wrist

and, as he did, she pushed a paper bag down inside her pants. He then led her out of the car and asked her what she had put in her pants. Though she did not respond at that point, moments later, after she had been handcuffed, she spontaneously stated, "Oh, hell, it's marijuana; get it." Thereafter, she reached down and pulled the bag out of her pants and handed it to him. At that point the defendant was advised she was under arrest for possession of marijuana and placed in the front seat of the Maule vehicle. Sergeant Tubbs advised the defendant of her Miranda rights, and then both she and Dowd were taken to the Winslow police department and booked. In the case which followed, Dowd was named a co-defendant, but, before trial, entered a plea of guilty under an agreement and was thereafter sentenced.

Five assignments of error are raised by defendant which we shall take up in the order presented.

## THE GRAND JURY INDICTMENT

■ The first question relates to the grand jury indictment charging the defendant with the crime here involved. It is conceded that the trial court incorrectly instructed the grand jury as follows:

> Now when you get the evidence completed, some of you might think there is probable cause and others think there isn't probable cause. But when you vote there has got to be at least nine to come up with a True Bill and *I understand also at least nine to come up with a No Bill*, and if you don't have at least nine, one way or the other, you haven't arrived at a decision with regard to the indictment. If you decide you are deadlocked and can't break that deadlock with discussion among yourselves—*in other words, break it to the extent of having nine either vote affirmative for True Bill or nine vote negative for No Bill*—then you would be deadlocked, in which event the County Attorney's Office should be notified. [Emphasis added.]

Defendant contends that the indictment should have been quashed because the instruction is contrary to both statute and rule in requiring nine grand jurors to concur on a finding of "no bill." We agree that the instruction is clearly erroneous as in Arizona there is no provision for return of a "no bill" of indictment by a grand jury. The statute requires only that nine jurors concur in order to return a true bill of indictment. See A.R.S. § 21–414 and 17 A.R.S., Rules of Criminal Procedure, Rule 12.7. In reviewing the record, however, we see that the vote to indict was eleven affirmative and none negative. The absence of even a single negative vote persuades us that the error, in this case, was harmless.

■ Defendant also contends that a statement by the court to the grand jury that if they could not agree they "probably should ask for more evidence" was prejudicial because the assumption that there was more evidence would by itself encourage the return of an indictment. We agree that the remark was improper, but we fail to see how any prejudice resulted to the defendant in this case as a result of it. The plain fact is that the grand jury did not ask for more evidence and concluded that the evidence which was before it was sufficient to indict.

■ Finally, defendant calls our attention to remarks of the county attorney in his presentation of the case to the grand jury. As we read them, they are essentially a review of the evidence. It is true that at one point the prosecutor stated to the grand jury that, "the evidence is quite clear" and at another point made an erroneous statement as to what the evidence showed. While we find the remarks improvident, they do not rise to the level of impropriety which would require us to reverse the trial court and order new grand jury proceedings. We find no attempt to influence the deliberations of the grand jury or usurp its function. Cf. *State v. Good*, 10 Ariz.App. 556, 460 P.2d 662 (1969).

## THE MOTION TO SUPPRESS EVIDENCE

Defendant contends evidence should have been suppressed for three separate reasons: namely, (1) the burden of proof was improperly shifted to the defendant; (2) there was no probable cause to detain, arrest and search the defendant, and (3) Miranda warnings were not timely given.

■ As to the first, there is no clear indication in the record as to how the trial court allocated the burden of proof. Rule 16.2(b), Rules of Criminal Procedure, provides as follows:

b. Burden of Proof on Pretrial Motions to Suppress Evidence.

The prosecutor shall have the burden of proving by a preponderance of the evidence, the lawfulness in all respects of the acquisition of all evidence which he will use at trial. However, whenever the defense is entitled under Rule 15 to discover the circumstances surrounding the taking of any evidence by confession, identification or search and seizure, or defense counsel was present at the taking, or the evidence was obtained pursuant to a valid search warrant, the prosecutor's burden of proof shall arise only after the defendant has come forward with evidence of specific circumstances which establish a prima facie case that the evidence taken should be suppressed.

Where the claim is made that the trial court entertained an erroneous concept concerning the burden of proof on a motion to suppress, we will evaluate the record from the standpoint of whether there is a reasonable basis and a sound legal theory to support the introduction of the evidence subject to the motion. In this instance, we are satisfied these criteria have been met and find no error in the order of the trial court denying the motion.

The next issue pertains to whether the arrest was lawful. If it was not, the contraband and other evidence obtained thereby was inadmissible under the exclusionary rule.

■ The defendant contends that there was no probable cause to "stop" the Dowd vehicle in the first instance and thus the arrest and search which followed were illegal. We note that there was considerable dispute over whether Chief Maule actually stopped the Dowd car, or whether the physical circumstances of the two cars meeting on the narrow, power line road produced what, in effect, was a blockage and thus a physical stop not necessarily brought about by police action. There is, however, credible evidence that on the road in question, one of the two oncoming cars would naturally yield to the other by pulling off to the side and stopping. From that point forward, the approach of the officers on foot to the Dowd car, the presence of smoke in the cab, the rolling down of the window, the smelling of marijuana, was a justifiable and reasonable sequence of events giving rise to probable cause and justifying the arrest of the defendant. The seizure of contraband which resulted was therefore legal and thus admissible as evidence.

■ Defendant's next argument is that her statement to Chief Maule about the marijuana should have been suppressed because she had not been given Miranda warnings before questioning. She contends that the statement was in response to his question to her while she was in custody. While there was some time lag between the question and the answer, we will assume that the remark was other than spontaneous. Nonetheless, we find the trial court was correct in admitting the statement in evidence.

The Miranda decision forbids interrogation by police officers, even routine or casual, once custody is clearly established, unless there has been a valid waiver by the defendant. *State v. Mumbaugh*, 107 Ariz. 589, 491 P.2d 443 (1971). However, several decisions interpreting *Miranda* have distinguished between "custodial interrogation" and general, on-the-scene questioning by police in the course of investigating the

possible commission of a crime.[1] The point at which police action reaches "custodial interrogation" is, of necessity, dependent upon the individual facts of each case.

Here, the events preceding the arrest of defendant "came in close succession." *Tellez* (Footnote 1), supra. There is no indication from the testimony that Maule's purpose was to elicit incriminating statements when, in response to defendant's action of hiding the bag, he asked her what she had stuffed in her pants. Maule's question to defendant in the flurry of the investigation did not rise to the level of a "custodial interrogation" to which the Miranda rule applies. Although there may have been the minimum evidence necessary to establish probable cause for arrest prior to the time Maule posed the question to defendant, there is no absolute point in every case at which preliminary investigation ceases and the process of interrogation which triggers the Miranda rule begins. This principle has been previously considered by this court in *Tellez,* quoting from *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966):

> * * * The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall short of the amount necessary to support a criminal conviction. 6 Ariz.App. at 256, 431 P.2d at 696.

Although the Sixth Amendment right to counsel was at issue in *Hoffa,* the quoted language of the United States Supreme Court in that cause is also applicable to the Fifth Amendment protections discussed in *Miranda.*

Even if we were to assume the statement to have been within the ambit of *Miranda,* we find it was harmless beyond a reasonable doubt since the bag containing the marijuana was seized following the defendant's lawful arrest and introduced into evidence. Thus, the conviction of the defendant did not depend upon the statement and it contributed nothing to the State's evidence which was not already present.

## OTHER ISSUES RAISED

By reason of the delay of the court reporter in furnishing a transcript of the motion to suppress held on May 22, 1974, counsel for defendant did not have it available until July 19, 1974, a day after the trial began, and then only after the testimony of the State's witness. Defendant contends that the delay prejudiced her right to a fair trial.[2]

We fail to see that the trial court abused its discretion when it denied a motion for new trial on this ground. In the first place, the transcript was for a motion to suppress evidence which was superceded by a later motion to suppress held after the court had granted a mistrial in the case some two months earlier. More important, counsel was given a continuance during the course of the trial to read it, and the State's witnesses were recalled so that counsel could cross-examine them from the transcript. While having the transcript in advance of trial is obviously more desirable, we believe that the defendant's right of cross-examination was adequately protected.

Finally, defendant seeks reversal of the convictions because documents and

1. See, e. g., *State v. Bainch,* 109 Ariz. 77, 505 P.2d 248 (1973); *State v. Melot,* 108 Ariz. 527, 502 P.2d 1346 (1972); *State v. Tellez,* 6 Ariz.App. 251, 431 P.2d 691 (1967). See also, *United States v. Kuntz,* 265 F.Supp. 543 (D.C.N.Y.1967); *People v. Glover,* 270 Cal.App.2d 255, 75 Cal.Rptr. 629 (1969);

*People v. Kenny,* 53 Misc.2d 527, 279 N.Y.S. 2d 198 (1966).

2. We do not have before us in this case the question of whether the defendant in a criminal case is entitled to a transcript of a pretrial motion to suppress, since that issue has not been raised.

notes of defense counsel were inadvertently allowed to remain at counsel table in the courtroom while it was in use by the jury during deliberation. By necessity, in Navajo County, the jury must use the courtroom for this purpose. When the trial was concluded, the bailiff informed court and counsel that the files had been removed, when in fact they had not. Nonetheless, there is no showing whatsoever that the jury failed to obey the court's instruction when it admonished them not to look at anything in the courtroom except the evidence. The presumption that the jury follows the instructions of the court applies in this case as there is no evidence to the contrary. Though we disapprove of allowing a jury access to materials which are not in evidence, we find no reversible error in this instance.

Since we do not find the errors alleged, either separately or cumulatively, require reversal of the conviction, the judgment and sentence of the trial court is accordingly affirmed.

OGG, P. J., and DONOFRIO, J., concur.