STATE of Missouri, Respondent,

v.

**Bruce TAYLOR, Appellant.**

No. 37594.

Missouri Court of Appeals,
St. Louis District,
Division Four.

July 26, 1977.

Motion for Rehearing and/or Transfer
Denied Sept. 12, 1977.

Application to Transfer Denied
Oct. 11, 1977.

---

Robert C. Babione, Public Defender, Mary Louise Moran, Kent W. Fanning, Asst. Public Defenders, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, George Peach, Circuit Atty., Richard L. Poehling, Asst. Circuit Atty., St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

Bruce Taylor, charged under the Second Offender Act, § 556.280 RSMo 1969, with burglary, second degree, was found guilty by a jury and sentenced by the court to the custody of the Department of Corrections for a term of eight years. Appellant's only point on this appeal is that the trial court erred in overruling his pre-trial motion to suppress evidence. We affirm.

About 4:00 o'clock in the morning of April 25, 1974, Police Officer Jerry Bradshaw noticed the glass had been broken in the front door of the National Food Store at the corner of Macklind and Southwest Streets. He then observed two persons, one of whom was appellant, in the store. Both ran toward the rear of the building. Officer Bradshaw and two other officers entered the building through the broken door, and went to the rear of the building into a storage area where they heard a pounding sound. When they entered that area appellant and his companion attempted to leave through an exterior door, but were met by two police officers waiting on the outside. Both were placed under arrest, and Officer Ronald Medlin read to appellant from a card the "Miranda warnings." Appellant admits in his brief that "the rights on the police card comply with the guidelines" set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Officer Medlin then asked appellant if he understood "his rights" and if he wanted to make a statement. Appellant replied that he understood his rights but that he did not wish to make a statement. Officer Medlin asked no further questions.

Appellant and his companion were then taken to the police station. About 5:30 o'clock Officers Bradshaw and Medlin and the manager of the burglarized store approached appellant. Officer Bradshaw asked appellant if he had been advised of his rights, and if he understood them, and appellant replied in the affirmative. The officer then asked appellant if he wished to make any statement in front of the store manager or the police officers, and appellant stated that he was one of those who had broken into the store.

The trial court overruled the motion to suppress the above statement of appellant. At trial the store manager was permitted to testify over objection that at the police station appellant stated, "We were the gentlemen that were in the store." Later, Officer Medlin testified without objection that appellant stated that "they were inside the food store."

Appellant relies on the statement in *Miranda v. Arizona*, supra, 86 S.Ct. at p. 1627 as follows:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to of during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his

privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked."

The above language has been classified as an "oversimplification," McCormick, Evidence (3 ed.), § 154, and it clearly is. It would be most unrealistic to say that once a person in custody exercised his right not to make a statement, that in no circumstance thereafter could he knowingly and understandingly and without coercion change his mind. In this case when appellant stated he did not want to make a statement, no further question was asked him until he was at the police station. He was not repeatedly questioned nor was there any persuasion or inducement to make a statement. There is no question but that he completely understood his right to remain silent. He affirmatively stated he understood his rights, and he had been arrested previously at least twelve times and each time he had been given his "Miranda warnings." About an hour and a half after his arrest he was asked if he then wanted to make a statement in front of the store manager or the officers, and he stated that he had broken into the store. There is nothing to indicate that if he had declined to make a statement, his wish not to do so would not have been honored.

We agree with the statement in *State v. Dyke*, 19 Or.App. 705, 528 P.2d 1073, 1076 (1974), that "The law does not prohibit him [an accused] from changing his mind. If he can change his mind, then the police are entitled to ask him if he has changed his mind, but * * * they cannot attempt to persuade him to do so and * * * they may not continue to question him after he claims his rights." See also *Massimo v. United States*, 463 F.2d 1171, 1174 (2d Cir. 1972), cert. den., 409 U.S. 1117, 93 S.Ct. 920, 34 L.Ed.2d 700 (1973), where it was stated that "The police have the privilege of 'asking a defendant to reconsider his refusal to answer questions,' *United States v. Collins*, 462 F.2d 792 (2d Cir. 1972)." In *Michigan v. Mosley*, 423 U.S. 96, 102, 104, 96 S.Ct. 321,

46 L.Ed.2d 313 (1975) the United States Supreme Court was called upon to reconcile its language in *Miranda v. Arizona*, supra, and it stated that the invocation of the privilege against self-incrimination was not a "*per se* proscription of indefinite duration," but that "the admissibility of statements obtained after a person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" Other cases in which it was held that after exercising the privilege not to make a statement, a person can change his mind include *Commonwealth v. Youngblood*, 453 Pa. 225, 307 A.2d 922 (1973); *People v. White*, 22 Ill.App.3d 180, 317 N.E. 323 (1974); *People v. Pittman*, 55 Ill.2d 39, 302 N.E.2d 7 (1973); *State v. McDonald*, 195 Neb. 625, 240 N.W.2d 8 (1976); *State v. Peevy*, 321 So.2d 234 (La.1975). The record clearly substantiates the findings of the trial court that the statement made by appellant at the police station was freely and voluntarily made after he had received and understood the "Miranda warnings," and the record clearly shows that there was no hint of any force, coercion, promise of reward or offer of leniency. The trial court did not err in denying appellant's motion to suppress appellant's statement as evidence.

In the circumstances we shall mention one further matter. The evidence that appellant was in the burglarized store was substantial and unimpeached, and in his brief appellant admits that "He was apprehended within the National Food Store." The other evidence of guilt was substantial to a degree that would negate any possibility of prejudice resulting from the admission of his inculpatory statement. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *People v. McKenzie*, 67 Mich.App. 356, 241 N.W.2d 205 (1976); *State v. Hocker*, 25 Ariz.App. 93, 541 P.2d 419 (1975); *Moreno v. State*, 336 N.E.2d 675 (Ind.App.1975); *United States v. Sigal*, 500 F.2d 1118 (10th Cir. 1974); *McCrary v. State*, 529 S.W.2d 467 (Mo.App.1975).

The judgment is affirmed.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.