556 P.2d 14

**The STATE of Arizona, Appellee,**

v.

**Francisco Juan MORENO, Jr., Appellant.**

**No. 1 CA–CR 1574.**

Court of Appeals of Arizona, Division 1.

Sept. 14, 1976.

Rehearing Denied Oct. 13, 1976.

Petition for Review Denied Nov. 16, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Stanley L. Patchell, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Joel M. Glynn, Deputy Public Defender, Phoenix, for appellant.

KRUCKER, Judge.

Appellant was tried and found guilty by the court of first-degree burglary and grand theft. The imposition of sentence was suspended and appellant was placed on two years' probation with the condition that he spend 15 weekends in the Maricopa County Jail. He raises two points of constitutional dimension on appeal but neither argument has merit.

The facts show that equipment was stolen from the Peoria City Maintenance Yard on April 17, 1975. During the course of the investigation, a police officer went to appellant's home. Appellant was not there, but his father admitted the officer who spotted a welding mask in appellant's bedroom which proved to be one of the items taken from the yard. The officer asked appellant's father to talk to his son about the incident which he did at his home with officers present. Appellant admitted taking the equipment and led officers to where it was secreted.

■ The first point raised is that the seizure of the mask was unreasonable and violated the Fourth Amendment. Under the Fourth Amendment, a search conducted without a warrant issued upon probable cause is per se unreasonable subject to only a few specifically established exceptions. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of the exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Katz,* supra. The problem involved herein centers on third-party consent searches and whether appellant's father was able to waive appellant's right. The United States Supreme Court said in *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974):

> " . . . [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." 94 S.Ct. at 993.

In defining "common authority", the Court in *Matlock* stated:

> "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements . . . . but rests rather on mutual use of the property by persons generally having joint ac-

cess or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 94 S.Ct. at 993, fn. 7.

The precise question involved here, the right of the father to waive the protected right of the child to be secure in his "house" and "effects" and to effectively consent to a search of a room occupied by the child, has never been passed upon by the United States Supreme Court. However, numerous authorities have stated that the validity of such searches and seizures rests upon the right of control over the premises by the one who gives the consent. 31 A.L.R.2d 1081 (1953); *State v. Kinderman,* 271 Minn. 405, 136 N.W.2d 577 (1965). In *Maxwell v. Stephens,* 229 F. Supp. 205 (D.C.E.D.Ark.1964), it was found that a mother, as opposed to the child, had the sole control, power and superior right to exclude others from her home and from the child's room, and therefore had the free choice to permit a police search. The court in *People v. Austin,* 53 Misc.2d 963, 280 N.Y.S.2d 433 (1967) upheld a search of a child's room with consent of the mother since she owned the home in which she and the child resided. A father was found to have the authority as owner and co-occupant of the home to permit a search of the area where the son slept in *State v. Haggard,* 89 Idaho 217, 404 P.2d 580 (1965).

■ In the instant case, there was some attempt made by defense counsel to establish that the appellant paid for some of his food to qualify him as a tenant to fall within the proscribed search of *Chapman v. United States,* 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961). Here, there is no · landlord-tenant relationship, only a family home in which appellant was given one room for his own use. Testimony showed appellant never excluded anyone from his room nor did he tell his parents

not to admit anyone as was the factual basis for invalidating the search in *People v. Nunn,* 55 Ill.2d 344, 304 N.E.2d 81 (1973). Herein, the father testified that the mother went into the room freely for cleaning purposes and the appellant's bedroom door did not lock from the outside so it could not be shown that appellant had exclusive use of the room. As such, we believe the necessary consent was given for a warrantless search by the father, and, from this, we find the seizure valid since the mask was in plain view and the officer had a lawful · right to be in the area he was in when he spotted the welding mask. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

■ Appellant's second contention is that his statements to the officer and to his father were involuntary since they were a result of "in custody interrogation" and he was not given the warnings required by *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* forbids interrogation by police officers, even routine or casual, once custody is clearly established, unless there has been a valid waiver by the defendant. *State v. Mumbaugh,* 107 Ariz. 589, 491 P. 2d 443 (1971). However, decisions interpreting *Miranda* have distinguished between "custodial interrogation" and general on-the-scene questioning by police in the course of investigating a crime. The point at which police action reaches custodial interrogation is, of necessity, dependent upon the facts in each individual case. *State v. Hocker,* 25 Ariz.App. 93, 541 P.2d 419 (1975). In this case, the officer approached appellant's father with the request that he speak to his son about the theft of the equipment since the officer suspected the son's participation in the crime. Our Supreme Court said in *State v. Bainch,* 109 Ariz. 77, 505 P.2d 248 (1973):

"The fact that an officer may be suspicious of an individual is not the test as

to whether Miranda warnings must be given prior to questioning, nor is the mere presence of a police officer to be considered a restraint on the suspect's liberty. The vital point is whether, examining all the circumstances, the defendant was deprived of his freedom of action in any significant manner, and the defendant was aware of such restraint." 109 Ariz. at 79, 505 P.2d at 250.

There is nothing in the record before us to show any restraint on the appellant. To the contrary, the questioning took place in appellant's home by his father. Appellant was free to leave the scene and refuse to talk to his father at all. The fact that the father questioned the appellant rather than the officer is of no importance. There was no restraint placed on the appellant and his statements are admissible.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concurring.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).