PEOPLE v GARY

Docket No. 86027. Submitted January 22, 1986, at Detroit.—Decided April 7, 1986.

Defendant, Stephen C. Gary, was arrested in his apartment in Detroit and was thereafter charged in the Recorder's Court for the City of Detroit with unarmed robbery. Defendant filed a motion to suppress all evidence flowing from the alleged illegal arrest arguing: (1) that his arrest was without probable cause, and (2) that the entry without a warrant into his home to make the arrest violated the 4th Amendment prohibition against unreasonable searches and seizures. Following an evidentiary hearing, the trial court, Michael F. Sapala, J., found that there was probable cause to make the arrest but nevertheless granted defendant's motion to suppress on the ground that defendant's brother, who admitted the arresting officers, had no authority to consent to the officers' entry into the apartment. The people appeal from the trial court's order by leave granted. *Held:*

1. Courtney Matthews, defendant's brother, consented to the entry by the police. However, the trial court correctly concluded that Matthews did not possess actual authority to give the consent to admit the officers.

2. Under the circumstances of this case, the officers reasonably could have believed that Matthews did in fact have the authority to consent to the search. The police had no independent information which would lead them to question Matthews's authority to consent to the entry and they were not faced with a situation which would cause a reasonable person to question his authority. The Court of Appeals declined to impose an obligation on the police to make a further inquiry than was made here unless the circumstances were such as to cause a

REFERENCES

Am Jur 2d, Searches and Seizures §§ 5, 35-83, 92-98, 107.

Lawfulness of warrantless search of purse or wallet of person arrested or suspected of crime. 29 ALR4th 771.

See also the annotations in the ALR3d/4th Quick Index under Search and Seizure.

reasonable person to question the consenting party's power or control over the premises or property.

    3. Matthews had actual authority to open the door and admit an outsider.

    4. The officers' arrest without a warrant inside the apartment was justified by a reasonable belief, conveyed to them by the objectively observable facts, that Matthews could consent to the entry.

Reversed and remanded for trial.

1. Constitutional Law — Searches and Seizures.

    The Fourth Amendment prohibits unreasonable searches and seizures; the amendment's language applies equally to seizures of persons and seizures of property (US Const, Am IV).

2. Constitutional Law — Arrest — Searches and Seizures.

    An arrest without a warrant inside a private home is improper and unreasonable under the Fourth Amendment in the absence of exigent circumstances or consent to the entry; a trial court must examine the totality of the circumstances in determining the validity of a consent (US Const, Am IV).

3. Criminal Law — Searches and Seizures — Consent.

    A prosecutor who seeks to justify an entry into premises without a warrant by proof of consent is not limited to proof that the consent was given by the defendant but may show that the consent was given by a third party who had equal possession or control of the premises.

4. Constitutional Law — Searches and Seizures — Consent to Search.

    Searching police officers may rely in good faith on the apparent capability of an individual to consent to a search under circumstances where the officers reasonably could have believed that the individual did, in fact, have the authority to consent to the search, where the police had no independent information which would lead them to question the individual's authority to consent to the search, and where the officers were not faced with a situation which would cause a reasonable person to question the consenting party's authority over the premises or property.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Deputy

Chief, Civil and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

*Elizabeth Jacobs,* for defendant.

Before: M. J. KELLY, P.J., and SHEPHERD and M. R. KNOBLOCK,* JJ.

SHEPHERD, J. On April 10, 1985, defendant was arrested in his apartment in Detroit and charged with unarmed robbery, MCL 750.530; MSA 28.798. Defendant filed a motion to suppress all evidence flowing from the alleged illegal arrest, arguing: (1) that his arrest was without probable cause, and (2) that the entry without a warrant into his home to make the arrest violated the Fourth Amendment prohibition against unreasonable searches and seizures. Following an evidentiary hearing, the trial court found that there was probable cause to make the arrest but nevertheless granted defendant's motion to suppress on the ground that defendant's brother, who admitted the arresting officers, had no authority to consent to the officers' entry into the apartment. The prosecution, by leave granted, appeals from the trial court's order. We reverse and remand for trial.

On April 10, 1985, several police officers went to defendant's apartment building after receiving an anonymous tip identifying defendant as the perpetrator of a number of purse snatchings in a particular area in Detroit. The caller gave the alleged thief's name, address and apartment number, as well as his description. Sergeant Wicker took the phone call and later compared the description given by the caller to that given by various victims. After concluding that the descriptions were similar, Sergeant Wicker and three other police

---

* Circuit judge, sitting on the Court of Appeals by assignment.

officers went to the apartment building to see if there was such an address and to see if the person named by the caller lived there and matched the description.

There is no significant dispute as to what happened when the police arrived. According to Sergeant Wicker, he rang the buzzer for the apartment the caller had identified. After a few seconds, Courtney Matthews, defendant's brother, came down and answered the door. Wicker told Matthews that he was looking for Stephen Gary and wanted to talk to him. Wicker also testified that he thought he asked Matthews whether he stayed in the apartment and received no answer to that question. Matthews testified that the officers merely identified themselves as police officers and stated that they were looking for Steven Gary. He testified that his response was "I said, yes, he lives upstairs. I said, I am his brother. I said, come on in and I opened the door and let them in". Wicker and another officer then followed Matthews up the stairs and into the apartment. Once inside the apartment, Matthews called out to defendant, who was in a bedroom, that someone was there to see him. According to Sgt. Wicker, when defendant came into the living room he (Wicker) could see that he matched the general description given by the caller and victims and immediately placed him under arrest. The police subsequently discovered that Matthews was only a visitor in the apartment, not an occupant. Matthews testified that he had come to the apartment about a half hour earlier and happened to answer the door because he was expecting a friend and defendant and defendant's girlfriend, who lived in the apartment, were both busy. Defendant told Matthews to "go downstairs and let him in".

Neither party contests the trial court's finding

that there was probable cause to make the arrest, although they disagree as to when probable cause arose. The defendant states that probable cause existed before the entry, while the prosecution states that the police had no probable cause until they saw defendant. We need not decide that issue since we find that the critical issue is whether there was a valid consent to the entry.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The language of the amendment applies equally to seizures of persons and seizures of property. *Payton v New York,* 445 US 573, 585; 100 S Ct 1371; 63 L Ed 2d 639 (1980). An arrest without a warrant inside a private home is improper and unreasonable under the Fourth Amendment in the absence of exigent circumstances or consent to the entry. *People v Oliver,* 417 Mich 366, 379; 338 NW2d 167 (1983). In determining the validity of a consent, the trial court must examine the totality of the circumstances. *People v Brown,* 127 Mich App 436, 440-441; 339 NW2d 38 (1983), *lv den* 419 Mich 896 (1984). When the prosecution seeks to justify an entry without a warrant by proof of voluntary consent, it is not limited to proof that the consent was given by the defendant, but may show that the consent was given by a third party who had equal possession or control of the premises. *People v Melvin Davis,* 146 Mich App 537; 381 NW2d 759 (1985).

On appeal, the prosecution seeks to justify the arrest without a warrant inside the apartment by claiming that Matthews consented to the entry. We agree that Matthews did consent to the entry but disagree that he possessed actual authority to give the consent to admit the officers. However, that conclusion does not end our inquiry. In *United States v Matlock,* 415 US 164, 177, fn 14;

94 S Ct 988; 39 L Ed 2d 242 (1974), the Supreme
Court "expressly left open the question of whether
a search without a warrant may be sustained
merely upon a showing that the searching officers
reasonably, albeit erroneously, believed that the
consenting party had sufficient authority over the
premises to permit the search". *People v Wagner,*
114 Mich App 541, 548-549; 320 NW2d 251 (1982).
In analyzing the issue of the apparent authority of
a third party to consent to a search, this Court in
*Wagner* applied the test set forth in *People v
Adams,* 53 NY2d 1, 9; 439 NYS2d 877; 422 NE2d
537 (1981):

> " 'We would agree that where the searching officers
> rely in good faith on the apparent capability of an
> individual to consent to a search and the circumstances
> reasonably indicate that that individual does, in fact,
> have the authority to consent, evidence obtained as the
> result of such a search should not be suppressed. * * *
> We emphasize that the police belief must be reasonable,
> based upon an objective view of the circumstances
> present and not upon the subjective good faith of the
> searching officers. Moreover, a warrantless search will
> not be justified merely upon a bald assertion by the
> consenting party that they possess the requisite author-
> ity. Nor may the police proceed without making some
> inquiry into the actual state of authority when they are
> faced with a situation which would cause a reasonable
> person to question the consenting party's power or
> control over the premises or property to be inspected.
> In such instances, bare reliance on the third party's
> authority to consent would not be reasonable and
> would, therefore, subject any such search to the stric-
> tures of the exclusionary rule.' " 114 Mich App 549-550.

In *Wagner,* we concluded that the police reason-
ably could not have believed that the consenting
third party had a sufficient relationship to the
premises to consent to the entry since, when police

asked the third party whether he lived in the house, he indicated only that the defendant's girlfriend rented the house. *Id.,* pp 550, 572. See also, *People v Wagner,* 104 Mich App 169, 177; 304 NW2d 517 (1981) (connected case).

In the present case, Matthews, who had been told by defendant to allow the entry of a person believed to be Matthews's friend, appeared at the door to the apartment building after the police rang the buzzer to defendant's apartment. Matthews invited the officers inside and informed them that defendant did live in the apartment and that he was defendant's brother. He then led the officers up to the apartment.

We conclude that under these circumstances the officers reasonably could have believed that Matthews did, in fact, have the authority to consent to the search. The police had no independent information which would lead them to question Matthews's authority to consent to the entry and they were not faced with a situation which would cause a reasonable person to question his authority. We decline to impose an obligation on the police to make a further inquiry than was made here unless the circumstances are such as to " 'cause a reasonable person to question the consenting party's power or control over the premises or property' ". 114 Mich App 549-550. The facts upon which we rely in making this determination are:

(1) There was testimony that the police did make inquiry of Matthews as to whether he lived in the apartment. His failure to respond was ambiguous. At this point the police could not know whether he had authority to admit them.

(2) When Matthews stated that defendant lived there and that he (Matthews) was defendant's brother a reasonable person could conclude that either Matthews lived there also or that he had

authority from whoever was inside to open the main entrance to the building in response to hearing the buzzer.

(3) It soon became obvious that defendant was inside the apartment. The officers could reasonably conclude that if defendant controlled the apartment he had either dispatched or authorized his brother to open the door. Matthews could easily have been led to believe that he had authority to admit anyone who was there. That was precisely the impression he conveyed to the officers.

(4) In any event, it is undisputed that Matthews had actual authority to open the door and admit an outsider. Neither Matthews nor defendant could possibly have been certain of who was at the door when they heard the buzzer. In cases we have examined where the entry has been held improper the person allowing the entry did not have actual authority from the owner or tenant to admit anyone.

The trial court correctly concluded that Matthews did not have the actual authority to allow police officers to enter the defendant's apartment but its analysis stopped short of considering the critical question of whether he had the apparent authority to consent to admitting the officers. We conclude that the officers' arrest without a warrant inside the apartment was justified by a reasonable belief, conveyed to them by the objectively observable facts, that Matthews could consent to the entry. Accordingly, we reverse the trail court's order and remand for trial.

Reversed and remanded.