PEOPLE v GRADY

Docket No. 134847. Submitted November 5, 1991, at Lansing. Decided
April 21, 1992, at 9:15 A.M.

Matthew J. Grady was charged in the 67th District Court with
possession of a stolen automobile. The court, Charles B. Mosier,
J., granted the defendant's motion to suppress evidence of the
stolen automobile, holding that the original observation of the
automobile in the garage of a premises owned by the defendant
constituted an illegal search that tainted its subsequent seizure
pursuant to a warrant, despite the fact that the police officer
who first observed the automobile believed that he had continu-
ing authorization to enter upon and inspect the premises. The
defendant had purchased the property from the person who
had requested that the police periodically inspect the premises,
and the police had not been informed of the transaction. The
Genesee Circuit Court, Robert M. Ransom, J., affirmed. The
people appealed by leave granted.

The Court of Appeals *held:*

Because the police previously had been requested by the
person having authority over the then vacant premises to
inspect it periodically, and because the police officer at the time
of the initial observation of the stolen automobile in the garage
on the premises reasonably believed that his inspection was
pursuant to a continuing authorization for the police to enter
and inspect the premises, the initial search of the premises was
not unreasonable, despite the fact that the property had been
sold to the defendant. The evidence should not have been
suppressed.

Reversed.

*Frank J. Kelley,* Attorney General, *Gay Secor
Hardy,* Solicitor General, *Robert E. Weiss,* Prose-
cuting Attorney, and *Donald A. Kuebler,* Chief,
Appellate Division, for the people.

*Richard L. Wurtz,* for the defendant.

Before: MacKenzie, P.J., and Sullivan and
G. S. Allen,* JJ.

Per Curiam. The people appeal by leave granted
a circuit court order that affirmed a district court
order granting defendant's motion to suppress. We
reverse.

The facts are undisputed. In September 1988,
the Mundy Township Police Department was
asked by James Horton to make periodic "vacation
checks" of a residence at 9512 S. Linden Road. The
owner of the home, Horton's uncle, had died,
leaving the home unoccupied. Horton informed the
police that he expected to visit the home on occa-
sion and described two automobiles that he would
be driving. The police then began making periodic
inspections, recording a total of thirty-three checks
over the next eight months.

When Officer Marshall David Guigear made a
routine check on May 9, 1989, he looked into the
garage and saw two cars that did not match the
description of Horton's cars. Officer Guigear
checked the doors of the home and found a breeze-
way door between the house and garage unlocked.
Believing that the security of the home may have
been violated, Officer Guigear checked the house
door and found it locked. The door to the garage
was unlocked, however. Officer Guigear went into
the garage and confirmed that the cars parked
there did not match those owned by Horton. The
hood of one of the cars, a late model Buick, was
partially open and its engine was missing. Officer
Guigear checked with the Law Enforcement Infor-
mation Network and learned that the Buick had
been reported stolen. The other automobile was

* Former Court of Appeals judge, sitting on the Court of Appeals by
assignment.

registered to defendant, with 9512 S. Linden Road as his address.

Unbeknownst to the police, the residence at 9512 S. Linden Road had been sold and deeded to defendant approximately three months earlier, on February 2, 1989. Attempting to contact defendant, Guigear learned that defendant worked for a business that police knew built high-performance vehicles from assorted vehicle parts. A search warrant was then obtained, and the Buick was seized. Defendant was charged with possession of the stolen Buick.

The district court originally found that the search and seizure was proper and denied defendant's motion to suppress the car as evidence, reasoning that the police had a right to be on the property because they had been requested to check the residence and were not notified to stop their periodic checks. On reconsideration, however, the court accepted the defense argument that Horton's consent had been terminated as a matter of law by the sale of the property. The court therefore concluded that the officer's presence was based solely on "a good faith belief that permission still existed for him to inspect the property without a warrant." Because Michigan has rejected the "good-faith" exception to the exclusionary rule, *People v Sundling*, 153 Mich App 277; 395 NW2d 308 (1986), the district court suppressed the evidence. The circuit court affirmed.

On appeal, the people contend that, notwithstanding that the property changed hands, the question for the court was whether, under the totality of the circumstances, the police reasonably believed that consent to search had been given. The people maintain that because the search was proper under the consent exception to the search

warrant requirement, defendant's motion to suppress should have been denied. We agree.

The Fourth Amendment generally prohibits the entry without a warrant of a person's home, whether to make an arrest or to search for specific objects. *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, see *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973), or from a third party who possesses common authority over the premises, see *United States v Matlock,* 415 US 164; 94 S Ct 988; 39 L Ed 2d 242 (1974).

Recently, the United States Supreme Court addressed the question presented in this case— whether an entry and search without a warrant is valid where it is based upon the consent of a person whom the police believe has authority over the premises, but who, in fact, no longer has such authority. *Illinois v Rodriguez,* 497 US —; 110 S Ct 2793; 111 L Ed 2d 148 (1990). In *Rodriguez,* the Court held that an entry without a warrant based on the consent of a third party whom the officers reasonably believe to possess common authority over the premises, but who in fact does not possess such authority, does not violate the Fourth Amendment proscription of unreasonable searches and seizures.

The Court's opinion in *Rodriguez* explicitly rejected the notion that, where police officers erroneously believe that a person has authority to consent, the consent is invalid for Fourth Amendment purposes, noting that the Fourth Amendment prohibits only "unreasonable" searches and seizures:

What [a person] is assured by the Fourth

Amendment itself, however, is not that no government search of his house will occur unless he consents; but that no such search will occur that is "unreasonable." US Const, Amdt 4. There are various elements, of course, that can make a search of a person's house "reasonable"—one of which is the consent of the person or his cotenant. The essence of respondent's argument is that we should impose upon this element a requirement that we have not imposed upon other elements that regularly compel government officers to exercise judgment regarding the facts: namely, the requirement that their judgment be not only responsible but correct.

\* \* \*

. . . It is apparent that in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable. As we put it in *Brinegar v United States,* 338 US 160, 176; 69 S Ct 1302; 93 L Ed 1879 (1949):

"Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."

We see no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant

because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape. [111 L Ed 2d 158, 159-160.]

Thus, the police belief that they have valid consent must be reasonable under the circumstances; a good-faith belief is not the controlling criterion. Michigan case law is in accord. See *People v Gary*, 150 Mich App 446; 387 NW2d 877 (1986).

In this case, defense counsel in arguing his motion to suppress explicitly conceded that at the time Guigear conducted his inspection of defendant's home, he reasonably believed that he was doing so pursuant to James Horton's valid request. Because Officer Guigear's conduct was completely reasonable, there was no Fourth Amendment violation.

Reversed.