PEOPLE v GOFORTH

Docket No. 191325. Submitted February 4, 1997, at Lansing. Decided
    March 14, 1997, at 9:25 A.M. Leave to appeal sought.

Scott D. Goforth was charged in the 50th District Court with posses-
    sion with intent to deliver marijuana after the police, in a search
    conducted with the consent of the defendant's mother, found mari-
    juana and a scale in his bedroom at the house of his parents, to
    whom he paid rent. The court, Leo Bowman, J., suppressed the evi-
    dence and dismissed the charge, ruling that the defendant's mother
    lacked apparent authority to consent to the search of his bedroom.
    The Oakland Circuit Court, Gene Schnelz, J., affirmed. The prose-
    cution appealed by leave granted.

The Court of Appeals *held*:

The Fourth Amendment generally prohibits law enforcement
    authorities from entering a person's home without a warrant,
    whether to make an arrest or to search for specific objects. The
    prohibition does not apply, however, to situations in which volun-
    tary consent has been obtained, either from the individual whose
    property is searched or from a third party who has common
    authority over the premises. The authority that justifies third-party
    consent rests on mutual use of the property by persons generally
    having joint access or control for most purposes, so that it is rea-
    sonable to recognize that any of the coinhabitants has the right to
    permit the inspection in his own right and that the others have
    assumed the risk that one of their number might permit the com-
    mon area to be searched.

Where, as here, a parent appears to the police to have common
    authority over a child's bedroom, i.e., joint access and control, it is
    reasonable for the police to believe that the parent may validly con-
    sent to a search of the child's bedroom.

Reversed and remanded.

O'CONNELL, P.J., concurring, stated that except in the most unu-
    sual situations, a parent always has the right to consent to the
    search of the bedroom of a child residing with that parent and that
    such consent is effective even when the child is present and
    objects to the search.

SEARCHES AND SEIZURES — THIRD-PARTY CONSENT TO SEARCHES OF PREMISES — PARENT'S CONSENT TO SEARCH OF CHILD'S BEDROOM.

A parent of a child who lives in the parent's house has the authority to provide valid consent to a search of the child's bedroom by the police where the parent has joint access and control over the bedroom (US Const, Am IV).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard Thompson*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Anica Letica*, Assistant Prosecuting Attorney, for the people.

*Kyle E. Andeer*, for the defendant.

Amicus Curiae:

*Michael Thomas, John D. O'Hair*, and *Timothy A. Baughman*, for Prosecuting Attorneys Association of Michigan.

Before: O'CONNELL, P.J., and MARKMAN and M. J. TAL-BOT*, JJ.

MARKMAN, J. The prosecution appeals by leave granted a circuit court order affirming a district court dismissal of a charge against defendant of possession with intent to deliver marijuana, MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c). We reverse and remand.

On January 6, 1993, while searching for a teenage girl who had been reported as missing, police officers went to the home where defendant lived with his parents. Defendant was aged eighteen at the time of the June 1993 preliminary examination and, according to his mother, he paid rent. Defendant's mother allowed the officers to enter the house to search for the run-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

away. In the course of their search, the officers entered defendant's bedroom.[1] They found and seized a pan on the floor containing four sandwich bags of marijuana, as well as a scale. While searching another house for the girl, they saw a young man who turned out to be defendant and noticed that he was wearing a beeper. The officers obtained an arrest warrant and arrested defendant on January 22, 1993, at which time they found marijuana on defendant.

The district court dismissed the charge against defendant relating to the January 6, 1993, seizure from his bedroom on the basis that his mother lacked authority to allow the officers to search his room. The prosecution appealed to the circuit court, which affirmed the district court's ruling. The prosecution then applied for leave to appeal to this Court, which was granted. On September 30, 1994, this Court vacated the district court's order of dismissal and remanded the case to the district court with instructions to state on the record or in a written opinion its findings of fact and conclusions of law regarding whether the officers reasonably believed that defendant's mother had apparent authority to consent to a search of defendant's bedroom. The district court reviewed the preliminary examination testimony and again found that defendant's mother did not have authority to allow the search because defendant had a legitimate expectation of privacy in his bedroom. It held that the officer did not act reasonably in believ-

---

[1] At the preliminary examination, defendant's mother testified that the officer asked if he could go into the room, she said, "No," but he entered anyway. However, she later testified that she "wanted him to look in [defendant's] room to make sure the [missing girl] wasn't there" and that she "allowed them to look in every other area of the house except [her bedroom, because her husband was sick and resting there]."

ing that defendant's mother had authority to consent to a search of defendant's bedroom. It specifically based this holding on defendant's mother's testimony that there was a "Keep Out" sign on defendant's door, that the door was closed,[2] and that defendant did not allow anyone in the room.[3] It held that, in this context, the officer should have asked defendant's mother whether she had defendant's permission to allow anyone into the room before he searched it. The prosecution again appealed to the circuit court, which affirmed the district court's order of dismissal, and again applied for leave to appeal to this Court, which was granted.

In order to satisfy the Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution, a search must be "reasonable." As a general matter, this requires that law enforcement authorities obtain a warrant. *People v Chism*, 390 Mich 104, 123, 139; 211 NW2d 193 (1973). However, Fourth Amendment rights may be waived, and one may always consent to a search of himself or his premises. *Schneckloth v Bustamonte*, 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973). A trial court is to review the "totality of circumstances" to determine the validity of consent to a search. *Chism, supra*; *People v Grady*, 193 Mich App 721, 723-724; 484 NW2d 417 (1992). The prosecution claims that the district court erred in ruling that defendant's mother

---

[2] At the preliminary examination, defendant's mother testified that defendant's bedroom door was "not open" but later clarified that the door had been open three to six inches. The police officer testified, "I know I did not open the door."

[3] However, defendant's mother testified that she had "authority to go in that room when [defendant is] not home" even when the door is closed (e.g., to clean the room or to gather clothes to launder them).

lacked apparent authority to allow the police to search defendant's bedroom. This Court reviews trial court decisions regarding the validity of consent for clear error. *Chism, supra.* We also review trial court decisions regarding motions to suppress evidence de novo. *Ornelas v United States,* 517 US ___; 116 S Ct 1657; 134 L Ed 2d 911, 919-920 (1996); *Thompson v Keohane,* 516 US ___; 116 S Ct 457; 133 L Ed 2d 383 (1995).[4]

Here, the district court followed *People v Flowers,* 23 Mich App 523; 179 NW2d 56 (1970). *Flowers* involved the search of the bedroom of a seventeen-year-old male who lived with and was supported by his father. Pursuant to the defendant's father's consent, police officers searched the home and found narcotics hidden in a stereo speaker in the defendant's room. The *Flowers* Court found that the father's consent had been freely and knowingly given but concluded that a parent "cannot waive the search privilege" for a child. *Id.* at 527. It cited *Stoner v California,* 376 US 483, 489; 84 S Ct 889; 11 L Ed 2d 856 (1964) (hotel clerk had no authority to consent to the search of a hotel guest's room), and held that the right to be free from unreasonable governmental searches is a personal right that cannot be waived by another. *Id.* at 526-527.

*Flowers* focused on whether the parent had authority to waive his child's privilege against unreasonable searches. In *Schneckloth, supra* at 241, the United

---

[4] The "clearly erroneous" standard of review, *People v Massey,* 215 Mich App 639, 641; 546 NW2d 711 (1996); is the proper standard only for matters of historical fact. All mixed questions of law and fact, and questions of law, must be reviewed de novo. *Ornelas, supra.* See also *People v Nelson,* 443 Mich 626, 631, n 7; 505 NW2d 266 (1993).

States Supreme Court distinguished Fourth Amendment rights from the rights that ensure a fair criminal trial and concluded that it would be "unrealistic" to apply a waiver analysis "in the informal, unstructured context of a consent search" and that a waiver approach would be inconsistent with decisions recognizing the validity of third-party consent to a search. *People v Reed*, 393 Mich 342, 363-364; 224 NW2d 867 (1975), followed *Schneckloth* and held that a waiver analysis is inapplicable to consent searches. Accordingly, *Flowers* incorrectly framed the issue of parental consent to a search in terms of whether parents could waive their child's privilege against unreasonable searches. Cf. also *People v Overall*, 7 Mich App 153; 151 NW2d 225 (1967).

In *Illinois v Rodriguez*, 497 US 177, 181; 110 S Ct 2793; 111 L Ed 2d 148 (1990), the Court summarized the current state of the law regarding third-party consent to a search:

> The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched or from a third party who possesses common authority over the premises. [Citations omitted.]

The *Rodriguez* Court cited *United States v Matlock*, 415 US 164, 171, n 7; 94 S Ct 988; 39 L Ed 2d 242 (1974), which defined "common authority":

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent . . . rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so

that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

The *Rodriguez* Court then considered the issue of apparent authority. It concluded that a search without a warrant may be valid "when based upon the consent of a third party whom the police, at the time of entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." *Id.* at 179, 189. It held at 188-189:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises?

In *Grady, supra* at 724-726, this Court followed *Rodriguez* and held that police officers' belief in a third party's ability to consent to a search must be reasonable under the circumstances; a good-faith belief is not the controlling criterion. In *People v Gary*, 150 Mich App 446, 452; 387 NW2d 877 (1986), this Court declined to impose an obligation on the police to make a further inquiry regarding a third party's ability to validly consent to a search unless the circumstances are such as to cause a reasonable person to question the consenting party's power or control over the premises or property. These authorities frame the issue as whether the police reasonably believe that the third party consenting to a search has common authority over the premises. Accordingly, the issue here is whether the police reasonably believed that

defendant's mother had common authority over the bedroom defendant occupied in her home.

We found no binding Michigan authority or any United States Supreme Court authority addressing the specific issue whether parents have sufficient common authority over a child's bedroom in their home to allow the parents to validly consent to a search thereof. However, a Sixth Circuit case addresses this issue. *United States v Austin*, 81 F3d 161 (CA 6, 1996), reported in full 1996 US App LEXIS 8256, involved the search of the defendant's room located on the third floor of his parents' home pursuant to the consent of his stepfather. The court noted that the defendant was aged twenty-five; that he paid rent, but not necessarily consistently; that other rooms on the third floor were used jointly by the family; that there were no locks or other obstacles preventing access to the third floor; that there were no kitchen facilities on the third floor; that defendant's mother frequently visited him in his room; that she once found a gun there and forbade him from leaving it "lying around"; and that his mother testified that she frequently searched the third floor for drugs, which "she thought was a common practice for parents who had children at home." The *Austin* court distinguished the case before it from cases holding that landlords could not consent to searches of rented premises on the basis that the defendant's relationship with his parents was not an "arms-length rental arrangement." It rejected the defendant's argument that *Matlock* required that the consenting third party actually live in the searched premises (i.e., that his stepfather live on the third floor.) The *Austin* court stated that the test for third-party consent is common authority, not common

occupancy. It noted that the defendant's reading of *Matlock* would result in the anomalous conclusion that the "room of an eight-year old child in a parent's house would also be a safe haven from police search, unless the child himself gave consent." It then held:

> Granted, Austin is 25 years old, and probably has a greater expectation of privacy than an eight-year old, but under the circumstances of this case, it is clear that Austin, whose bedroom was regularly searched by his mother, was living in the room subject to his parents' terms. As such, the consent of the owner of the house where Austin's bedroom was located was valid. [1996 US App Lexis 8256, *11.]

We find this reasoning persuasive.

The courts of other states have relied on *Matlock* and determined that a parent had sufficient "common authority" over a child's room to authorize the parent to consent to a police search of the child's room. Some of these cases found that ownership of the house, or provision of or access to the living quarters, conferred common authority under *Matlock*. See *State v Douglas*, 204 NJ Super 265, 278-280; 498 A2d 364 (1985); *State v Middleton*, 266 SC 251, 259; 222 SE2d 763 (1976), vacated 429 US 807; 97 S Ct 44; 50 L Ed 2d 69 (1976), reaff'd 268 SC 152; 232 SE2d 342 (1977). Other cases found common authority established by the defendant's failure to take steps to exclude others from his room. See *State v Swenningson*, 297 NW2d 405, 407 (ND, 1980) (the defendant's father and sister could enter the defendant's room at any time, and there was no lock on the door), and *State v Moreno*, 27 Ariz App 460, 462; 556 P2d 14 (1976) (the defendant's father frequently entered the defendant's room to clean it, and the room did not lock from the outside). Where the defendant used premises in com-

mon with others, this has also been found to confer authority on the one sharing use of the room with the defendant. See *United States v Evans*, 27 F3d 1219, 1230 (CA 7, 1994) (father could consent to search of garage when he had keys to both bays and could enter the right bay, where the defendant did business, at any time), *Douglas, supra* at 279-280, and *People v Seidel*, 115 Ill App 3d 471, 478; 70 Ill Dec 780; 449 NE2d 1384 (1983) (the defendant's grandmother had a sufficient relationship to the defendant's room to consent to its search when she stored some of her own belongings there). Some courts have held that the performance of such services as cleaning and doing the defendant's laundry, which require entry into the defendant's room, establishes a sufficient relationship with the premises to give the parent authority to consent. See *State v Ham*, 113 Idaho 405, 406-407; 744 P2d 133 (1987), and *Preston v State*, 444 So 2d 939, 942-943 (Fla, 1984).

On the basis of these authorities, we conclude that *Flowers* was wrongly decided. It set forth a per se rule that parents cannot validly waive a child's privilege against unreasonable searches. *Flowers, supra* at 526-527. *Schneckloth, supra,* held that the waiver approach is inapplicable to consent searches. In Michigan, there is no Fourth Amendment violation where police officers conduct a search pursuant to the consent of a third party whom the officers reasonably believe to have common authority over the premises. *Grady, supra* at 724. The majority of states that have considered this issue does not follow a rigid rule like that of *Flowers* with respect to parental consent to searches of their children's rooms but instead has adopted approaches like the one generally used

in Michigan third-party consent cases. Michigan's law regarding the validity of third-party consent, the reasoning of *Austin,* and the fact that other states routinely find such consent valid support our conclusion that where a parent has common authority over a child's bedroom (i.e., joint access and control, *Matlock, supra* at 171, n 7), the parent may validly consent to a search thereof.

Thus the issue here is whether the police officer reasonably believed that defendant's mother had common authority over defendant's bedroom and could therefore validly consent to the search thereof. Defendant's mother consented to the officers' entry to her house to search for the missing girl. There were no indications that she lacked access to defendant's bedroom. The officer testified that he did not recall seeing a "Keep Out" sign on defendant's bedroom door. In any event, children commonly place such signs on their doors without it seriously affecting their parents' access to their rooms. Such a sign would not reasonably cause an officer to question defendant's mother's authority to consent to a search of the room. See *Gary, supra* at 452. Nor were there other indications that defendant had exclusive access to the room, e.g., a locked door to which defendant's parents had no key. Further, defendant's mother's preliminary examination testimony demonstrated that she did, in fact, have access to and control over defendant's room. The totality of the circumstances establishes that the officer reasonably believed that defendant's mother could consent to the search of defendant's bedroom. Accordingly, we hold that the district court erred in ruling that the officer did not have a reasonable belief that defendant's mother had

authority to consent to his search of defendant's bedroom.

For these reasons, we reverse the district court's dismissal of the charge against defendant and remand the case for the district court to enter an order binding defendant over on the charge relating to the January 6, 1994, seizure of marijuana from his bedroom. We do not retain jurisdiction.

Reversed and remanded.

M. J. TALBOT, J., concurred.

O'CONNELL, P.J. *(concurring)*. I concur with the majority, but write separately to emphasize that, excepting the most unusual of situations, a parent always has the right to consent to the search of the bedroom of a child residing with that parent. As stated in LaFave & Israel, Criminal Procedure (2d ed), § 3.10(e), p 242:

> If a son or daughter, whether or not still a minor, is residing in the home of the parents, generally it is within the authority of the father or mother to consent to a police search of that home which will be effective against the offspring. This is unquestionably so as to areas of common usage, and is also true of the bedroom of the son or daughter when a parent has ready access for purposes of cleaning it or when because of the minority of the offspring the parent is still exercising parental authority.

In other words, "[t]he parent's rights are 'superior to the rights of children who live in the house,' which means . . . that the parent's consent would be effective even when the child was present and objecting." LaFave, 3 Search and Seizure (3d ed), § 8.4(b), p 768.

In the present case, defendant, though not a minor, resided with his mother, who had "ready access" to

clean his room and to gather laundry. Unquestionably, the mother could validly consent to the search.