*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC DALE WALKER,

        Defendant-Appellant.

UNPUBLISHED
October 15, 2025
12:18 PM

No. 374535
Cass Circuit Court
LC No. 2024-010112-FH

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals by leave granted[1] the trial court's order denying his motion to suppress evidence discovered during a warrantless search of his home. We reverse.

## I. FACTUAL BACKGROUND

In May 2024, law enforcement officers responded to a report of domestic violence made by defendant's girlfriend. Sergeant Jason Jarrard, Deputy Tyler Carson, and Deputy Travis Brown of the Cass County Sherriff's Department responded to the call. Sergeant Jarrard and Deputy Brown were familiar with defendant. Both officers had been to defendant's home on multiple occasions in response to other domestic-violence calls involving his ex-wife and ex-girlfriends.

When Sergeant Jarrard arrived at defendant's house, Deputy Carson and Deputy Brown were already at the scene. The deputies were speaking with defendant's girlfriend outside the house. She told the officers defendant was experiencing what she described as "psychosis," in which he believed that swelling in his hand and foot meant that he was "transforming." Defendant's girlfriend explained that he was prediabetic and the swelling was consistent with that

---

[1] *People v Walker*, unpublished order of the Court of Appeals, entered April 15, 2025 (Docket No. 374535).

diagnosis. When she suggested that he seek medical attention, defendant pushed a table full of food onto the floor, smashed items, and then shoved her to the floor.

Defendant's girlfriend told the police that she had lived with defendant "on and off" for the past six months. However, she indicated that she had permanently moved out of the house, but that she still owned chickens that lived on the property. She stated, "I don't have anything else in there. . . . I only stop by to check on the chickens and make sure [defendant]'s still breathing." When the officers asked her whether she was going to stay at the home that night, she responded, "As long as [defendant's] not going to be here, I will be here. I just want to make sure everything's cleaned up. I have been drinking so I don't want to really go anywhere." She further stated, "I have everything in my car, like, I already have a storage unit, everything is out."

During this exchange, officers arrested defendant and placed him in a squad car. As defendant's girlfriend was explaining the incident, she told the officers, "I mean, feel free to go in and take pictures because I'm really upset. I just went grocery shopping. All of it's on the ground." Accordingly, Sergeant Jarrard entered the home. Neither officer asked defendant for permission to enter the house, even though defendant was still on the premises. Inside the house, Sergeant Jarrard found broken glass and food on the floor, which trailed into the kitchen. Sergeant Jarrard asked defendant's girlfriend if defendant was "doing drugs again," at which point she gestured toward the kitchen. In the kitchen, Sergeant Jarrard found a black ArmaLite rifle on the kitchen island with a magazine in it. Sergeant Jarrard also observed a powdery substance on a plate on the island, which tested positive for cocaine. Sergeant Jarrard then asked defendant's girlfriend about a .45-caliber gun that might be in the house. He entered a bedroom that he believed belonged to the girlfriend and opened the drawer of an end table in the room. Sergeant Jarrard found bullets in the drawer, but no gun. He proceeded to go through the drawers of several other dressers and tables in the room.

Defendant was charged with felon in possession of a firearm, MCL 750.224f; possession of less than 25 grams of a controlled substance, MCL 333.7403(2)(a)(v); and carrying a firearm during the commission of a felony, MCL 750.227b. At defendant's October 2024 preliminary examination, the trial court relied on Sergeant Jarrard's testimony to find that there was probable cause to bind defendant over on the charges. In November 2024, defendant moved to quash the bindover. In December 2024, defendant moved to suppress the evidence of the firearm and the cocaine, arguing that Sergeant Jarrard entered defendant's home unlawfully without a search warrant or his consent.

The trial court held a hearing on both motions in January 2025. At the hearing, Sergeant Jarrard testified that he entered the home because defendant's girlfriend invited him to come in and take photographs of the altercation evidence. Deputy Brown testified similarly. Sergeant Jarrard stated that he believed that defendant's girlfriend was a resident of the home from whom he received permission to enter because he had heard other officers identify her as defendant's girlfriend. Her comment about staying at the home if defendant were taken away also influenced his belief that she was a resident of the home. Sergeant Jarrard also confirmed that he went to the address that defendant's girlfriend provided in response to her 911 call about the domestic violence. However, Sergeant Jarrard admitted that he could have completed an affidavit to secure a search warrant and that there were no emergency or exigent circumstances at play.

The trial court found that Sergeant Jarrard acted on a reasonable belief that defendant's girlfriend had authority to consent to a search because she was present at the location of a domestic-violence incident and she still had chickens on the property. The court stated that the officers could reasonably believe that if "someone has property there, live animals, that they would have access to the property." The trial court further noted that defendant's girlfriend indicated that she would stay at the home while defendant was in jail, which suggested that she had permission from defendant to do so. Accordingly, the trial court denied defendant's motions. This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court erred by concluding that defendant's girlfriend had the authority to consent to a search of his house and that the evidence found in the search should have been suppressed. We agree.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

Analogously, the Michigan Constitution provides that "[t]he person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures." Const 1963, art 1, section 11. "Absent a compelling reason, Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment." *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022). "[T]he general rule is that officers must obtain a warrant for a search to be reasonable under the Fourth Amendment." *People v Hughes*, 506 Mich 512, 525; 958 NW2d 98 (2020). Therefore, "searches conducted without both a warrant and probable cause to believe evidence of wrongdoing might be located at the place searched are unreasonable per se." *People v Mahdi*, 317 Mich App 446, 458; 894 NW2d 732 (2016) (quotation marks and citation omitted).

Several exceptions to the warrant requirement exist, including the consent exception. *Id*. "Unless a defendant can identify a flaw in the grant of consent that renders the search unreasonable, consensual searches are wholly valid." *People v Mead*, 503 Mich 205, 215; 931 NW2d 557 (2019). "An officer must obtain consent to search from someone who has the authority to give it. Generally, that means either the property's owner or a third party who shares common authority over the property." *Id*. at 217. "Whether a third party has common authority to consent derives from the mutual use of the property by persons having joint access or control over the property." *People v Thurmond*, 348 Mich App 715, 750; 20 NW3d 311 (2023). "[T]he scope of any consent search is defined by the consenting party, and [] the standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness." *Mead*, 503 Mich at 219 (quotation marks and citation omitted).

This third party's authority can also be "*apparent* common authority." *Id*. at 217. Under the doctrine of apparent authority, "a search may be upheld on the basis of a third party's consent

if police, at the time of entry, reasonably believe that the person possesses common authority over the premises, even if that person lacks actual authority." *Thurmond*, 348 Mich App at 750. Accordingly, "[i]n Michigan, there is no Fourth Amendment violation where police officers conduct a search pursuant to the consent of a third party whom the officers reasonably believe to have common authority over the premises." *People v Goforth*, 222 Mich App 306, 311-312, 315; 564 NW2d 526 (1997). See also *Illinois v Rodriguez*, 497 US 177, 179, 181; 110 S Ct 2793; 111 L Ed 148 (1990); *United States v Matlock*, 415 US 164, 171 n 7; 98 S Ct 988; 39 L Ed 2d 242 (1974).

"[A] good-faith belief is not the controlling criterion" for whether the officer's belief that the party has authority to consent was reasonable. *Goforth*, 222 Mich App at 312. Police are not obligated "to make a further inquiry regarding a third party's ability to validly consent to a search unless the circumstances are such as to cause a reasonable person to question the consenting party's power or control over the premises or property." *Id*. "[I]f the circumstances reasonably indicated [that a third party] had mutual use of or control over the [property], the officers were under no obligation to ask clarifying questions." *People v Brown*, 279 Mich App 116, 133-134; 755 NW2d 664 (2008) (quotation marks, citation, and brackets omitted).

In the present case, there is no ambiguity—defendant's girlfriend was not living in defendant's house on the night in question. She explicitly told the officers that all of her belongings had been moved out of the house, with the exception of her chickens. She also stated that she "only stop[ped] by to check on the chickens and make sure [defendant]'s still breathing." The girlfriend's explicit statements that she had moved all of her belongings out of the house directly undermines any claim the officer may have had regarding defendant's girlfriend's actual common authority over the premises, as common authority requires "mutual use of the property by persons generally having joint access or control for most purposes[.]" *Brown*, 279 Mich App at 131 (quotation marks and citation omitted). By telling the police that she had completely moved out, defendant's girlfriend effectively disclaimed any ongoing mutual use or control over the property. *Id*.

The search was equally unjustifiable under the apparent-authority doctrine. The standard requires asking whether the facts available to the officer would "warrant a [person] of reasonable caution in the belief" that the consenting party could authorize a search. *Goforth*, 222 Mich App at 312 (quotation marks and citation omitted). Here, the girlfriend's explicit statement that she had moved all of her belongings out of the house alerted the officers that she lacked common authority over the premises. Her statements that she only stopped by to check on defendant and her chickens further reinforces that she was present as a visitor in defendant's house, rather than someone with common authority over the premises. *Id*. Defendant's girlfriend thus did not have apparent authority to consent to a search of defendant's house.

No other exceptions to the warrant requirement would apply to permit law enforcement to enter defendant's home. In addition to consent, another exception to the warrant requirement is the exception for "exigent circumstances." If a search is conducted in exigent circumstances, police officers "may enter a dwelling without a warrant if the officers possess probable cause to believe that a crime was recently committed on the premises, and probable cause to believe that the premises contain evidence or perpetrators of the suspected crime." *People v Beauschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001) (quotation marks and citation omitted). Another

exception is the emergency-aid exception, which allows a police officer to enter a home "without a warrant when they reasonably believe that a person is in need of immediate aid. They must possess specific and articulable facts that lead them to this conclusion." *Id*. at 756 (quotation marks and citation omitted). Finally, under the inevitable-discovery exception, the prosecution can generally admit "tainted evidence when the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitable would have been revealed in the absence of police misconduct." *People v Stevens*, 460 Mich 626, 637; 597 NW2d 53 (1999).

In the present case, Sergeant Jarrard testified that there were no exigent or emergency circumstances to otherwise justify the warrantless search of defendant's house. See *Beauschlein*, 245 Mich App at 749, 756. He plainly indicated that the girlfriend's statements formed the sole basis for his belief that he could enter the house without a warrant. There is also no clear evidence of inevitable discovery because, without entering defendant's home, Sergeant Jarrard would not have discovered the firearm and cocaine. See *Stevens*, 460 Mich at 637. The prosecution notes on appeal that the gun and the cocaine were in plain view when they were discovered. "The plain-view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are *lawfully* in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996) (emphasis added). Because the officers did not lawfully enter defendant's home in this matter, the plain-view doctrine is inapplicable and does not cure the illegality of the search. *Brown*, 279 Mich App at 131. Accordingly, no exception to the warrant requirement applies, and the trial court erred by declining to suppress the evidence.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin