# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES COLEMAN,

        Defendant-Appellant.

UNPUBLISHED
January 5, 2016

No. 320844
Oakland Circuit Court
LC No. 2013-246591-FH

Before: MURRAY, P.J., and METER and OWENS, JJ.

PER CURIAM.

A jury convicted defendant of transporting a female[1] for prostitution, MCL 750.459; accepting the earnings of a prostitute, MCL 750.457; and using a computer to commit a crime, MCL 752.796 and MCL 752.797(3)(f). The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to three concurrent prison terms of 176 months to 40 years each. Defendant appeals as of right. We affirm.

Defendant was arrested as part of a police investigation of a sex trafficking operation in the Southfield area in May 2013. The prosecution presented evidence that defendant recruited women who were drug addicts and advertised their services through a website. Defendant provided his recruits with drugs, shelter, and food, while taking money they earned through prostitution. The defense argued at trial that defendant was merely helping women stay off the streets and that he was not profiting from their acts of prostitution.

## I. MOTION TO SUPPRESS POLICE STATEMENT

Defendant first argues that the trial court erred by allowing his custodial police statement to be admitted at trial. Defendant argues that the statement was inadmissible because it was obtained in violation of his right to counsel. We disagree. We review de novo a trial court's ultimate decision regarding a motion to suppress, but review the court's factual findings for clear error. *People v Williams*, 240 Mich App 316, 319; 614 NW2d 647 (2000). Deference is given to the trial court's assessment of the weight of the evidence and the credibility of the witnesses.

---

[1] The statute has since been amended to refer instead to a "person."

-1-

*People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000). A finding is clearly erroneous if it leaves the reviewing court with a definite and firm conviction that a mistake has been made. *People v Givans*, 227 Mich App 113, 119; 575 NW2d 84 (1997).

"A criminal defendant has a constitutional right to counsel during interrogation." *People v Tierney*, 266 Mich App 687, 710; 703 NW2d 204 (2005). Once a defendant invokes his right to counsel, the police must terminate their interrogation immediately and may not resume questioning until counsel arrives or the defendant initiates further communication with the police. *People v Elliott*, 494 Mich 292, 302; 833 NW2d 284 (2013). Evidence obtained in violation of this principle is subject to suppression. *People v Harris*, 261 Mich App 44, 55; 680 NW2d 17 (2004). "However, the defendant's invocation of his right to counsel must be unequivocal." *Tierney*, 266 Mich App at 711. " '[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.' " *Id.*, quoting *Davis v United States*, 512 US 452, 459; 114 S Ct 2350; 129 L Ed 2d 362 (1994).

The trial court observed a video recording of defendant's police interview during which defendant claimed to have invoked his right to counsel. During a discussion about whether defendant would consent to a search of his laptop computer and cellular telephones, the following exchange occurred:

> *Defendant*: Uh, before I get to signing the waiver thing—um—what's my charge? And *I don't know if I may just talk to my lawyer first*. Or, I mean, I need to see what I'm being charged with.

> *Detective Pieroni*: Uh, well, there's gonna be several charges, okay? That's what we want to talk to you about—

> *Defendant*: Oh.

> *Detective Pieroni*: —okay? Obviously you saw the girls that we already took into custody—

> *Defendant*: Huh?

> *Detective Pieroni*: You saw the girls we took into custody. Um, they've already talked to us, okay, we have their side of the story. But we don't have your side of the story, okay?

> *Defendant*: Right.

> *Detective Pieroni*: And, uh, we've been doing this a long time and we know there's always two sides to every story, okay.

> *Defendant*: Oh, yeah.

> *Detective Pieroni*:  Um, and that's why I'd like to sit down and talk to you about that, okay?  Is that still okay?
>
> *Defendant*:  *Yeah, um, that's no problem.*
>
> *Detective Pieroni*:  Okay.  [Emphasis added.]

The trial court did not err in finding that defendant's brief reference to a lawyer was not an unequivocal request for an attorney, but rather, in the trial court's words, a "rhetorical contemplation or query."  Although the detective was not required to ask clarifying questions about defendant's voiced contemplation, *Davis*, 512 US at 461-462, the detective responded to defendant's question about the charges before asking defendant whether it was "still okay" if they talked about the incident.  Defendant responded, "Yeah, um, that's no problem."  We agree with the trial court that defendant did not unequivocally invoke his right to counsel.  The police are not required to cease questioning "when the suspect *might* want a lawyer."  *Id*. at 462 (emphasis in original).  The documentary evidence of defendant's *Miranda*[2] waiver of rights form also supports the trial court's finding that defendant knowingly and willingly waived his right to consult with an attorney.  It is undisputed that defendant was advised of his *Miranda* rights, indicated that he understood those rights, initialed each right, and signed a written waiver.  Defendant has not demonstrated that the trial court's findings are clearly erroneous.  Consequently, the trial court did not err in denying defendant's motion to suppress his statement.

## II.  MOTION TO SUPPRESS EVIDENCE

Defendant next argues that the trial court erred by allowing evidence obtained from the search of his hotel room to be admitted at trial.  Again, we disagree.

Both the United States Constitution and the Michigan Constitution prohibit unreasonable searches and seizures.  US Const Am IV; Const 1963, art 1, § 11.  Generally, searches and seizures without a warrant are unreasonable per se.  *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996).  Valid consent is a recognized exception to the warrant requirement, and consent may come "either from the individual whose property is searched, or from a third party who possesses common authority over the premises."  *Illinois v Rodriquez*, 497 US 177, 181; 110 S Ct 2793; 111 L Ed 2d 148 (1990) (citations omitted).  In either situation, "the police belief that they have valid consent must be reasonable under the circumstances[.]"  *People v Grady*, 193 Mich App 721, 726; 484 NW2d 417 (1992).  The reasonableness of the officer's belief must be measured objectively.  *People v Goforth*, 222 Mich App 306, 312; 564 NW2d 526 (1997).  "A trial court is to review the totality of circumstances to determine the validity of consent to a search."  *Id*. at 310 (citations and quotation marks omitted).

At an evidentiary hearing, the trial court heard testimony from three police officers involved in the search of the hotel room before concluding that the entry and search were valid pursuant to consent.  The evidence showed that when the officers knocked on the hotel room

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

door, a woman, Christy King, answered and voluntarily allowed them inside. Defendant was not present in the room, only King and a child. King told the police that the room was registered in her name and gave her consent to search the premises. Hotel records confirmed that King, not defendant, was the person who rented the room. Defendant suggests that because he gave King the money to pay for the room, the officers could not have reasonably believed that King had authority to consent to a search. However, the police were not required to determine the source of the money King used to pay for the hotel room before assuming that she had the ability to validly consent to a search. The circumstances did not reasonably indicate to the police that King lacked power or control over the premises. Only King and a child were present in the room, and the room was registered in King's name. The objective circumstances provided the police with a reasonable basis for believing that King had authority over the hotel room, and thus could provide valid consent to a search of the room. Consequently, the trial court did not err in denying defendant's motion to suppress the evidence.

We also reject defendant's challenge to the subsequent search of certain items seized from the room, i.e., his laptop computer and cellular telephones. Defendant argues that his consent to search those items, which he gave during his police interview, was invalid because he invoked his right to counsel. As previously discussed, however, defendant failed to establish that he unequivocally invoked his right to counsel during the interview. Defendant consented to the search of the seized items and signed a consent form. Accordingly, this claim lacks merit.

### III. JURY INSTRUCTION

Defendant argues that his conviction of transporting a female for prostitution must be vacated because the trial court's jury instruction for the offense did not include the requirement that the female be transported into or out of the state of Michigan, which defendant contends was required pursuant to the explicit language of MCL 750.459. We disagree.

Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583-585; 556 NW2d 820 (1996). Claims of instructional error involving issues of law are reviewed de novo. *People v McMullan*, 284 Mich App 149, 152; 771 NW2d 810 (2009). Jury instructions are reviewed in their entirety to determine whether any error requiring reversal occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). A defendant is entitled to have the jury decide his guilt or innocence after considering every essential element of the charged offense. *Id*.

As plaintiff observes, this Court held in *People v Green*, 123 Mich App 563, 565-566; 332 NW2d 610 (1983), that MCL 750.459 includes acts of intrastate transportation. In *Green*, the defendant argued that the statute was unconstitutionally vague and overbroad. *Id*. at 565. In rejecting the defendant's vagueness challenge, this Court held that the defendant's conduct

> clearly fits within the statute. He intentionally drove in his car a woman from Saginaw to Midland to place her into a house of prostitution. Whatever else the statute may or may not cover, it applies here. [*Id*. at 565-566.]

The trial court's jury instruction, consistent with *Green*, fairly presented the transportation element of the offense of transporting a female for prostitution, did not lessen the

prosecution's burden of proof, and sufficiently protected defendant's rights. Defendant does not address, or even mention, the *Green* decision in his brief on appeal, despite the fact that it was referenced by the prosecutor and the trial court below. Defendant has not shown that he was prejudiced by the trial court's instruction.

## IV. ADMISSION OF THE VIDEO RECORDING OF DEFENDANT'S STATEMENT

Defendant argues that the trial court erred in admitting the video recording of his police interview, which was captured on two DVDs, at trial. Because defendant objected to the admission of the DVDs because of a gap in the recording, his argument based on the rule of completeness is preserved. Defendant did not, however, object to the admission of the DVDs on the grounds that they were not properly authenticated or that the audio quality was poor. Because an objection on one ground is insufficient to preserve an appellate challenge based on a different ground, *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003), those latter issues are not preserved. We review preserved evidentiary claims for an abuse of discretion. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An unpreserved evidentiary claim is reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### A. DOCTRINE OF COMPLETENESS

Defendant's police interview is contained on two DVDs. Detective Pieroni was the primary interviewing officer, but a second detective was also present in the interview room. Detective Pieroni explained that, after the first DVD was full, he left the interview room for less than five minutes to put in a second disc, and that although questioning typically stops when one officer leaves the room, "sometimes the other person will just pick up." Detective Pieroni acknowledged that there might have been questions while he was out. The trial court rejected defense counsel's argument that the approximately five-minute gap between the two DVDs violated the rule of completeness. We agree.

MRE 106 states:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

"Thus, the rule of evidence would only be pertinent if defendant sought, but was denied, permission to have a complete writing or recorded statement introduced." *People v McGuffey*, 251 Mich App 155, 161; 649 NW2d 801 (2002).

MRE 106 is not implicated here because defendant's entire recorded statement was admitted. Evidence of what defendant might have stated during the five-minute gap was neither recorded nor reduced to writing. Moreover, the jury was fully informed that there could have been "less than five minutes" of questioning that was not recorded, and the circumstances of the omitted portion of the interview. Consequently, defendant's argument lacks merit.

## B. UNPRESERVED CLAIMS

Defendant's two new arguments raised on appeal are equally without merit. Pursuant to MRE 901(a), "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." In accordance with MRE 901(b)(1), the testimony of a witness with knowledge that "a matter is what it is claimed to be" can be used for authentication or identification. The interviewing detective, Detective Pieroni, testified and identified the DVDs as the video footage of defendant's custodial police interview. Thus, the video recording met the authenticity requirements, and accordingly, defendant has failed to establish a plain error.

Likewise, there was no plain error in the admission of the recorded statement on the basis of its audio quality. Defendant relies on the transcriptionist's statement in the record that the DVDs were not transcribed from when they were played in court "because of too many indiscernible statements." However, the trial court and the parties had agreed to have the transcriptionist transcribe the interview using the actual DVDs of the interview, rather than relying on the audio recording from trial. The fact that the transcriptionist had difficulty transcribing an audio recording of the DVDs played in court does not mean that the DVDs themselves were inaudible. On the contrary, we have observed and listened to the DVDs in their entirety and found them sufficiently audible. Consequently, there was no plain error in the admission of the DVD recording of defendant's statement.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that his convictions must be vacated because the prosecution failed to present sufficient evidence to support any of the convictions. We disagree. When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v Brantley*, 296 Mich App 546, 550; 823 NW2d 290 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## A. TRANSPORTING A FEMALE FOR PROSTITUTION

Defendant argues that his conviction of transporting a female for prostitution must be vacated because the prosecution failed to present sufficient evidence that he transported a woman, or caused a woman to be transported, into or out of the state of Michigan. This sufficiency challenge is a rehashing of defendant's argument, discussed in section III, *supra*, that MCL 750.459 requires transportation of a person into or out of Michigan. As indicated, a person violates MCL 750.459 if the person transports someone and the object of the trip is for the purpose of prostitution, and intrastate travel will suffice. *Green*, 123 Mich App at 566, 568. There was evidence that defendant either drove the women to a hotel or arranged for their transportation, where they engaged in sexual acts with arranged dates, and that defendant received the money earned from those acts of prostitution. Viewed in the light most favorable to

the prosecution, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant transported a female for prostitution.

## B.  ACCEPTING EARNINGS OF A PROSTITUTE

The elements of accepting the earnings of a prostitute are that the defendant (1) received money from a prostitute, (2) knew the individual was a prostitute when he took the money, (3) knew the money he received had been earned through prostitution, and (4) did not give the prostitute anything of value in exchange.  *People v Martin*, 271 Mich App 280, 325; 721 NW2d 815 (2006).  Under the statute, " 'consideration' does not include the provision of goods and services that are intended to further or keep the prostitute engaged in the business of prostitution." *Id*. at 326.

Defendant argues only that the prosecutor failed to prove beyond a reasonable doubt that he actually made any money because he provided the women with hotel rooms, meals, drugs, and other items.  The women consistently testified that they turned over all of their earned proceeds from their dates to defendant, and he admitted receiving money from the women.  Although there was evidence that defendant would provide the women with drugs and other items, there was no evidence that the prostitution proceeds were used only to sustain the women.  The jury reasonably could have found that defendant, who had difficulty explaining another actual source of income during his police interview, was making money from the prostitution.  Moreover, defendant acknowledges that this same argument was presented to the jury during trial.  This Court will not interfere with the jury's role of determining issues of weight and credibility.  *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).  Rather, this Court must draw all reasonable inferences and make credibility choices in support of the jury's verdict, and that deferential standard of review "is the same whether the evidence is direct or circumstantial." *Nowack*, 462 Mich at 400.  Viewed in the light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant accepted the earnings of a prostitute.

## C.  USING A COMPUTER TO COMMIT A CRIME

Defendant argues that the prosecution failed to present sufficient evidence that he used his computer with the specific knowledge that prostitution was taking place.  There was evidence that an expert forensic analysis of defendant's computer disclosed volumes of documentation of Backpage.com activity.  The women testified that defendant posted the ads to arrange for their dates and that defendant was aware that they were engaging in sexual acts in exchange for money.  On the day of his arrest, defendant was at the hotel, in the room next to where a prearranged date was taking place, and jumped out of the window to flee the police.  From this evidence, the jury reasonably could infer that defendant was fully aware that he was using his computer to commit a crime.  *Nowack*, 462 Mich at 400 (referring to inferences).  The evidence was sufficient to sustain defendant's conviction of using a computer to commit a crime.

## VI.  OFFENSE VARIABLE 9

Defendant argues that the trial court erred in assessing 10 points for offense variable (OV) 9 of the sentencing guidelines, because there was insufficient evidence to support a finding

that the women involved in the prostitution were "victims." We disagree. When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

We note the Michigan Supreme Court's recent holding that the sentencing guidelines are deficient to the extent they "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *People v Lockridge*, 498 Mich 358, 364; 870 NW2d 502 (2015). However, defendant has not raised a *Lockridge* issue on appeal; his attempt to do so by way of a delayed brief was rejected by this Court. *People v Coleman*, unpublished order of the Court of Appeals, entered November 24, 2015 (Docket No. 320844).

OV 9 addresses the number of victims. Ten points are to be assessed for OV 9 if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). Each person "placed in danger of injury or loss of life or property" is to be counted as a victim. MCL 777.39(2)(a). In this case, defendant argues that OV 9 was not supported because there was evidence that two of the women had performed acts of prostitution before meeting him, and all of the women were heroin addicts who were already "in constant danger in the streets." Defendant attempts to downplay his own acts, which formed the basis of the sentencing offense. Given the evidence that defendant approached the women, gave them drugs to continue their drug habit, and arranged for them to engage in acts of prostitution with strangers in random hotels, a preponderance of the evidence supports that the women qualify as victims under OV 9. Accordingly, the evidence provided a reasonable basis for the trial court to conclude that defendant's conduct warranted the 10-point score for OV 9.

## VII. OV 19

In a supplemental brief, defendant argues that he is entitled to resentencing because the trial court erroneously assessed 10 points for OV 19.

OV 19 is to be scored at 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49. In assessing points under OV 19, a court may consider the defendant's conduct after the completion of the sentencing offense. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). A defendant interferes with the administration of justice by "oppos[ing] so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). This Court has noted that a defendant's conduct of "fleeing from police contrary to an order to freeze" is sufficient to support a score of 10 points under OV 19. *Id*. at 343-344.

Detective Otto testified that as the police were knocking on the door of the hotel room and announcing their presence, he heard a window being manipulated. He advised the team that a suspect might be leaving through a window and headed outside. Once outside, Detective Otto observed defendant "coming from the direction of the actually open window from room 276

running towards the hotel next door which is the Red Roof Inn." Detective Otto observed that the screen had been removed from the open window of room 276. Defendant was detained and arrested. Although there was no specific order to "freeze," it is nevertheless a clear inference that defendant was fleeing the scene in response to police presence. Accordingly, we conclude that trial court did not err in concluding that defendant's conduct warranted the 10-point score for OV 19.

Affirmed.


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Donald S. Owens