# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICHARD EARL THOMAS,

Defendant-Appellant.

UNPUBLISHED
July 17, 2018

No. 337315
Wayne Circuit Court
LC No. 16-007659-01-FH

Before: O'BRIEN, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

A jury convicted defendant of two counts of felon in possession of a firearm, MCL 750.224f, two counts of felon in possession of ammunition, MCL 750.224f(6), and two counts of possession of a firearm during the commission of a felony, second offense, MCL 750.227b. Defendant appeals as of right. We affirm.

Defendant's convictions arise from his possession of two firearms and related ammunition during the late evening of August 17, 2016, in a Detroit neighborhood. The police were called to the neighborhood because of a report of a man with a long black gun. Neighbors who were outside informed the officers that the gunman had gone into a townhouse that belonged to defendant's mother, Nelda Singleton. According to the officers, they knocked on the door, were allowed in, and observed defendant—the only male in the house—standing next to a closet. Officers conducted a pat-down search of defendant and discovered a loaded gun magazine in defendant's vest pocket. After obtaining consent to search the home, the officers searched the closet near where defendant was standing and discovered a loaded AR-15 assault rifle, a 30-round magazine, and a loaded nine-millimeter handgun. At trial, defendant denied possessing any weapons or ammunition that evening, and denied having any knowledge of the guns or ammunition that were discovered inside the house. The defense attacked the credibility of the neighbors who reported the incident and the testimony of the responding police officers. Defendant and his sister, Kimberly Singleton, both testified that the firearms discovered by the police belonged to defendant's son, Richard Clowers, who had recently moved to Arizona and was storing some of his belongings at the premises.

-1-

On appeal, defendant first argues that defense counsel was ineffective for failing to call Clowers as a defense witness. Because no *Ginther*[1] hearing was conducted in this case, our review is limited to mistakes apparent on the record. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003). In order to obtain a new trial on a claim for ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "[T]he defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). Defendant has the burden of establishing the factual predicate of his ineffective assistance claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Defendant asserts that defense counsel was ineffective for failing to locate and subpoena Clowers for the purpose of testifying that he, and not defendant, was the actual owner of the firearms found by the police during the search of Nelda's house. Counsel's decision about whether to call a witness is a matter of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). A defense counsel's failure to call a witness can constitute ineffective assistance only where it deprives the defendant of a substantial defense. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990).

The record discloses that Clowers was listed as a defense witness and his absence was discussed at trial. Thus, it is apparent that counsel was aware of the witness. However, defendant has not provided a witness affidavit or identified any other evidence of record establishing Clowers's proposed testimony. Indeed, at trial, defendant, defendant's sister, and defendant's mother all testified that they were unaware of Clowers's location. Absent a showing that Clowers could have provided favorable testimony and was willing to testify at trial, defendant cannot establish that he was prejudiced by trial counsel's failure to call Clowers as a witness at trial.

Further, assuming—as defendant asserts—that the purpose in calling Clowers would have been to present his testimony that he was the actual owner of the firearms recovered by the police, defendant has not demonstrated that the failure to present this testimony deprived him of a substantial defense or otherwise affected the outcome of the trial. The jury was already made aware that Clowers was the owner of the firearms through the testimony of both defendant and his sister. More significantly, Clowers's alleged *ownership* of the firearms was not dispositive of whether defendant *possessed* the firearms. See *People v Burgenmeyer*, 461 Mich 431, 438-439; 606 NW2d 645 (2000). "Possession of a firearm can be actual or constructive, joint or exclusive." *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). Because defendant was not found in physical possession of the firearms discovered during the search, the prosecution's theory at trial was that defendant had constructive possession of the firearms.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus between defendant and the [firearm]." *People v Minch*, 493 Mich 87, 92; 825 NW2d 560 (2012) (quotation marks and citation omitted). "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Johnson*, 293 Mich App at 83 (quotation marks and citation omitted).

In this case, the question of possession depended on the credibility of the eyewitness testimony that defendant went inside Nelda's house with a long gun, and the credibility of the police testimony that defendant was standing by the closet where the loaded rifle and loaded nine-millimeter gun were found and that officers found a loaded gun magazine on defendant's person when they conducted a pat-down search. Defendant squarely denied each of these claims. Thus, the principal task for the jury at trial was to resolve the credibility of these competing testimonies. Even if Clowers had testified that he was the *owner* of the guns—a fact already presented to the jury—that testimony would not have been significant in resolving the conflicting testimony regarding defendant's *possession* of the firearms and ammunition on the night of the charged offenses. Therefore, we cannot conclude that defense counsel's failure to locate and call Clowers as a witness deprived defendant of a substantial defense or otherwise affected the outcome of the trial.

Next, defendant argues that the trial court erred by denying his motion to suppress the evidence seized from his mother's house during a warrantless search. Specifically, defendant contends that the consent the officers received to search the house was not voluntary and was otherwise invalid. We disagree. When reviewing a trial court's decision on a motion to suppress evidence, we review the trial court's findings of fact for clear error and its ultimate decision de novo. *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009). Thus, a trial court's decision regarding the validity of consent is reviewed for clear error. *People v Goforth*, 222 Mich App 306, 310; 564 NW2d 526 (1997). Deference is given to the trial court's assessment of the weight of the evidence and the credibility of the witnesses. *People v Sexton (After Remand)*, 461 Mich 746, 752; 609 NW2d 822 (2000).

Both the United States and the Michigan Constitution prohibit unreasonable searches and seizures. US Const Am IV; Const 1963, art 1, § 11. Generally, searches and seizures without a warrant are unreasonable per se. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). Accordingly, police officers must normally obtain a search warrant before conducting a search or must establish that one of the limited exceptions to the warrant requirement applies. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000).

Valid consent is a recognized exception to the search-warrant requirement, and consent may come "either from the individual whose property is searched, or from a third party who possesses common authority over the premises." *Illinois v Rodriquez*, 497 US 177, 181; 110 S Ct 2793; 111 L Ed 2d 148 (1990) (citations omitted). In either situation, "the police belief that they have valid consent must be reasonable under the circumstances[.]" *People v Grady*, 193 Mich App 721, 726; 484 NW2d 417 (1992). To be valid, consent to search must be "unequivocal, specific, and freely and intelligently given." *People v Dagwan*, 269 Mich App 338, 342, 711 NW2d 386 (2005). "A trial court is to review the totality of circumstances to

determine the validity of consent to a search." *Goforth*, 222 Mich at 310 (quotation marks and citation omitted).

At the evidentiary hearing, the trial court heard testimony from the officer who conducted the search and the homeowner, Nelda, who gave consent for the search. Although defendant denied in his written motion that Nelda ever consented to a search of her house, he agreed at the evidentiary hearing that consent was given, and argued instead that the consent was not voluntary. The crux of defendant's argument below was that the consent was not voluntary because the officer told Nelda that consenting to a search was in her "best interest." There is no dispute that the officer did not explain to Nelda what "best interest" meant. Nelda testified that she assumed it meant that if the officers returned with a warrant, they would "tear [her] house up." According to Nelda, her motivation for giving consent was to avoid her own perceived belief that if she did not consent, her house would be in disarray from the police conducting a search with a warrant. Even if Nelda's testimony is credited, it does not demonstrate that Nelda was coerced by the police. As the trial court observed, it may have been in Nelda's best interest to consent to the search, which was very confined. The totality of the circumstances does not demonstrate that Nelda's consent to search was the product of coercion. Consequently, the trial court did not err by denying defendant's motion to suppress the evidence found in Nelda's home.

Also, in a claim presented for the first time on appeal, defendant argues that this case should be remanded to the trial court for further proceedings because Nelda's consent, even if voluntary, cannot be deemed valid because the police were trespassing when they knocked on her door at 11:00 p.m. at night. In support of this argument, defendant relies on *People v Frederick*, 500 Mich 228, 242-243; 895 NW2d 541 (2017), in which our Supreme Court held that remand was required for a determination of whether the defendants' consent to the searches, given as the officers were trespassing during predawn hours, was sufficiently attenuated from the officers' unconstitutional search. However, unlike in *Frederick*, the police in this case were investigating a present threat. They arrived within five minutes of receiving a dispatch of an armed man in the neighborhood. Therefore, the record does not support defendant's claim that the police were trespassing on Nelda's property when they knocked on her door at 11:00 p.m. to investigate this immediate and ongoing threat.

Moreover, appellate review of this claim of error has been waived. At the evidentiary hearing, defense counsel clarified that she was not disputing the propriety of the officers' initial conduct, including defendant's arrest. Defense counsel stated that "[t]he problem I have with what the Detroit Police Department did is not in their response." Counsel explained that she understood "from the police officer's point of view, oh, my goodness, they have a, a potentially crazy man—with an AK47 assaulting his girlfriend." Counsel repeatedly argued that the issue was that the police officers could have obtained a warrant after "they've cleared the house" and defendant was in custody, as opposed to asking for consent to search the house. Thus, defense counsel clearly acknowledged the propriety of the officers' conduct of approaching Nelda's house at 11:00 p.m. to investigate the reported threat. "[A] defendant should not be allowed to assign error on appeal to something his own counsel deemed proper at trial. To do so would allow a defendant to harbor error as an appellate parachute." *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998).

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant raises additional issues challenging the prosecutor's conduct, the effectiveness of defense counsel's assistance at trial, and the trial court admission of evidence. None of these issues have merit.

Because defendant failed to object at trial to either the prosecutor's conduct or the admission of the challenged evidence, these claims are unpreserved. We therefore review these claims for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "Substantial rights are affected when the defendant is prejudiced, meaning the error affected the outcome of the trial." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012). Because no *Ginther* hearing was conducted on defendant's claims of ineffective assistance of counsel, our review is limited to mistakes apparent on the record. *Riley*, 468 Mich at 139.

Defendant argues that the prosecutor engaged in misconduct that denied him his right of confrontation when she allegedly committed fraud on the court by misrepresenting the identity of a witness. We disagree.

Detroit Police Officer Harry Taylor testified that he and his partner were dispatched to defendant's mother's house and arrived within five minutes of receiving the call. As they approached the house, there were several people outside an adjacent townhouse. As Officer Taylor approached the group, a female sitting on the porch informed him that a man with a gun had gone inside Nelda's house. At trial, the prosecutor presented Melissa Spann as the person who made the statement to Officer Taylor. Spann lived next door to Nelda's house and was outside with a group of other people when the police arrived. Spann testified that she observed defendant exit his truck, carrying a long black gun, and go inside Nelda's house. However, Spann denied that she made a verbal statement to the police when they arrived, and claimed she "just pointed next door" as others made statements. The police later came to her house to discuss the incident.

Based on Spann's testimony that she only pointed and did not make any verbal statement to the police upon their arrival, defendant now argues that the prosecutor perpetrated a fraud on the court by misrepresenting that Spann was the person who made the statement to Officer Taylor. This representation led the court to overrule defense counsel's hearsay objection to Officer Taylor's testimony that he proceeded to investigate Nelda's townhouse after a female on the porch at the adjacent townhouse informed him that a man with a gun went inside Nelda's house. Before allowing Officer Taylor's testimony, the trial court instructed the jury: "So, ladies and gentlemen, um, I'm gonna allow the officer to say what the woman on the front porch said. And at this point it's only to explain what he did after that. Whether or not what she said is true or not will be tested when she testifies herself."

"A fraud is perpetrated on the court when some material fact is concealed from the court or some material misrepresentation is made to the court." *Matley v Matley (On Remand)*, 242 Mich App 101, 102; 617 NW2d 718 (2000) (quotation marks and citation omitted). Preliminarily, it is not apparent that Spann was not the person who made the statement to Officer Taylor. The record indicates that the declarant was a black female who lived in the townhouse immediately adjacent to Nelda's townhouse, admitted that she observed defendant with a long

gun, and was sitting on the porch of her townhouse when the police arrived. Those facts are all consistent with Spann. Indeed, defendant has not made an offer of proof identifying a different declarant. Further, it was undisputed that Spann did not want to be identified, was reluctant to cooperate, and had to be brought to court by the police. In opening statement, defense counsel observed:

> This particular neighbor when the officers speak to her originally doesn't wanna give her name. Doesn't want to give a statement. Doesn't wanna give a written statement. Certainly doesn't wanna sign it. And certainly doesn't wanna be here.

Contrary to what defendant now argues, the mere fact that Spann testified at trial that she did not make a verbal statement to the police, but only pointed the police in the direction of defendant's mother's house, does not lead to a conclusion that the prosecutor intentionally deceived the court. It raises an issue of witness credibility, as both parties addressed in closing argument.

Further, even assuming that Spann was not the declarant, defendant has not shown that the prosecutor knew that Spann was not the declarant and sought to make a material misrepresentation to the court. Both parties asked Spann questions regarding what she saw and what she did. Defense counsel, the court, and the jury were all aware that Spann denied that she verbally informed the police, upon their arrival, that defendant had a gun. Instead, Spann claimed that she only pointed the police in the direction, as other people were making statements. Thus, defendant has not demonstrated that material facts were concealed from the court. We therefore reject defendant's claim that the prosecutor committed fraud on the court.

Within this issue, defendant also asserts that, because of the prosecutor's alleged fraud on the court by misrepresenting Spann as the declarant who made the statement to Officer Taylor, the prosecutor was able to introduce inadmissible testimonial hearsay in violation of defendant's right of confrontation. Both the United States and the Michigan Constitution guarantee a criminal defendant the right "to be confronted with the witnesses against him." *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012); see also US Const, Am VI; Const 1963, art 1, § 20. The Confrontation Clause prohibits the admission of all out-of-court testimonial statements unless the declarant was unavailable at trial and the defendant had a prior opportunity for cross-examination. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). "However, the Confrontation Clause does not bar the use of out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 10-11. "[A] statement offered to show the effect of the out-of-court statement on the hearer does not violate the Confrontation Clause." *Id*. at 11. "Specifically, a statement offered to show why police officers acted as they did is not hearsay." *Id*.

The statement made as the police arrived at the scene was not offered to prove the truth of the matter asserted, i.e., to prove that defendant was in possession of a firearm. Instead, as the trial court instructed the jury, the statement was offered to provide context for understanding the course of action taken by the police. See *Chambers*, 277 Mich App at 11. Therefore, defendant has not shown that his confrontation rights were violated.

We also reject defendant's related argument that defense counsel was ineffective for failing to object to the prosecutor's conduct or move for either a mistrial or a directed verdict once it became apparent that Spann was not the person who spoke to Officer Taylor at the scene. While defense counsel might have offered an objection based on Spann's testimony that she only pointed, defendant has not overcome the strong presumption that defense counsel employed sound trial strategy in this instance. As previously discussed, it is not apparent that Spann was not the declarant. Indeed, it appears from the record that defense counsel, who was clearly aware of Spann's testimony, took the position that Spann was in fact the declarant and decided to use Spann's denial of making the statement to Officer Taylor to argue that her and the officer's testimony was not credible. Decisions about defense strategy, including what arguments to make, are matters of trial strategy, *Rockey*, 237 Mich App at 76, and "this Court will not second-guess defense counsel's judgment on matters of trial strategy," *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). Defense counsel has wide discretion regarding matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). Given the circumstances, counsel's reasons for proceeding as she did were objectively reasonable, *Trakhtenberg*, 493 Mich at 51, and defendant was not denied the effective assistance of counsel.

In his last issue, defendant argues that the trial court erred—or possibly conspired with the prosecutor—when it admitted the challenged statement through Officer Taylor, which defendant maintains was inadmissible hearsay. We have already rejected this same challenge in the context of defendant's prosecutorial misconduct and confrontation claims. This argument is a rehashing of defendant's earlier arguments, but presented as a claim of evidentiary error. Because the prosecutor did not engage in any fraudulent conduct that caused the trial court to allow a testimonial statement of an absent declarant such that defendant's confrontation rights were violated, defendant is not entitled to appellate relief.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Patrick M. Meter
/s/ Michael J. Riordan